Donald Grant MacDONALD, Appellant,

v.

Linda Ann MacDONALD, Appellee.

No. A14–90–01114–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 9, 1992.

Pamela E. George, Houston, for appellant.

Gary L. McConnell, Angleton, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

## OPINION ON REHEARING

ELLIS, Justice.

Donald Grant MacDonald (Grant), appeals from an order granting, Linda Ann MacDonald (Linda), sole managing conservatorship of their nine and a half year-old daughter. Grant brings five points of error. We affirm.

The parties were husband and wife from 1971 until they were divorced in 1983. Their marriage produced three children: two sons, DJM and AJM, and one daughter, KVM. At the time of trial, DJM was eighteen years old, AJM was sixteen and KVM was nine and a half. At the time of their divorce, the parties entered into an "agreement incident to divorce" that provided for a joint managing conservatorship of their three children.

In 1988, Linda moved to modify the divorce decree and sought sole managing conservatorship of the children. Grant responded with a cross-action to modify the divorce decree and to obtain sole managing conservatorship of the children. In 1990, Linda amended her earlier motion to modify and sought sole managing conservatorship of only her younger children, AJM and KVM. Before trial, AJM executed an affidavit choosing Grant as his sole managing conservator. At the close of Linda's evidence, Grant moved for a directed verdict that he be appointed sole managing conservator of AJM and KVM. That motion was granted as to AJM but denied as to KVM. After hearing all the testimony, the jury found that Linda should be appointed sole managing conservator of KVM. The trial court signed a final order naming Linda sole managing conservator of KVM and Grant sole managing conservator of AJM. Grant's "first amended motion to amend or reform the judgment, alternatively motion for new trial" was denied by the trial court.

In his first point of error, Grant attacks the legal and factual sufficiency of the evidence.

■■■ When both legal and factual sufficiency points are raised, we must first examine the legal sufficiency of the evidence. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981). In reviewing a "no evidence point," we are to consider only the evidence and inferences that tend to support the jury's findings and disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988). If there is any evidence of probative value to support

the finding, we must uphold the jury's finding and overrule the point of error. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If the finding is supported by legally sufficient evidence, we must then weigh and consider all the evidence, both in support of, and contrary to, the challenged finding. *Id.* The jury's finding must be upheld unless it is so against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). We are not free to substitute our judgment for that of the jury simply because we may disagree with the jury's verdict. *Herbert v. Herbert,* 754 S.W.2d 141, 142 (Tex.1988).

The best interest of the child is always the primary consideration of the court in determining questions of managing conservatorship. TEX.FAM.CODE ANN. § 14.07(a) (Vernon 1986). Under section 14.081(d) of the Family Code, a court may replace a joint managing conservatorship with a sole managing conservatorship if:

(1)(A) the welfare of the child is a matter of immediate and serious concern;

(B) there has been a substantial and unexcused violation of the terms and conditions established in the existing conservatorship decree; or

*(C) the circumstances of the child or of one or both of the joint managing conservators have so materially and substantially changed since the rendition of the decree that it has become unworkable or inappropriate under existing circumstances; and,*

*(2) the appointment of a sole managing conservator would be a positive improvement for and in the best interest of the child* (emphasis added).

TEX.FAM.CODE ANN. § 14.081(d) (Vernon Supp.1991).

■■■ Since both parties pled the terms of subsections (1)(C) and (2) above, the only issue for the jury was, which parent, based upon the best interest of the child, should be named KVM's sole managing conservator. The charge defined "best interest of the child" as "the most desirable or favorable effect upon the child." The jury was

instructed to make the best interest of the child their primary consideration and to weigh the following factors:

(1) The emotional and physical needs of the child now and in the future;

(2) The emotional and physical danger to the child now and in the future;

(3) The parenting ability of each person seeking managing conservatorship;

(4) The programs available to each person seeking managing conservatorship to assist them in promoting the best interest of the child;

(5) The plans of each person seeking managing conservatorship;

(6) The stability of the home of each person seeking managing conservatorship of the child;

(7) The acts or omissions of each person seeking managing conservatorship of the child;

(8) The desires of the child; and,

(9) Any excuse of the parents for their acts or omissions.

### Physical and Emotional Needs

There is ample evidence that both parents have provided and will provide the basic necessities for the children, though Linda is primarily dependent on Grant as a source of support. Both parents testified that they were capable of meeting the emotional needs of KVM. Linda acknowledged that it was important for KVM to maintain a relationship with her father and stated that she did her best to see that the relationship was established. Linda testified that KVM has inquired about physical changes to her body and noted that KVM would be able to rely upon her, as she relied upon her mother, for emotional assistance during those changes. Much was made of KVM's close relationship with AJM, who elected to live with his father and has been doing so since in February, 1990. The evidence is that KVM and AJM used to squabble frequently among themselves but that they have grown closer since their separation. While KVM is close to AJM, there is no evidence that KVM's relationship with him is any more important than her relationships with other members of the family. Moreover, it was pointed out that AJM would be separated from KVM within two years, when AJM goes to college.

### Emotional and Physical Danger

There is no evidence that either parent emotionally or physically abused KVM. There is evidence that both parents maintained a certain amount of discipline with their children. Both related instances where they lost their temper with one or more of the children. Linda related one instance where she invited KVM to live with her father when KVM complained about Linda's refusal to buy her an expensive outfit. At the time, KVM commented that Linda "got enough child support to buy [her] the outfit." When Linda replied that she did not, KVM snapped that "daddy will buy me the outfit." Grant related an instance where he ordered the oldest child to move out. AJM testified that his mother often invited him to live with his father. Dr. Grace Jameson, testified on behalf of Grant that these "invitations" sent negative messages to the children. There is testimony from AJM that his mother once slapped him and slapped his brother "once or twice." AJM also testified that his mother once threw a plate of food at his brother. AJM further testified that his father rarely gets angry. Linda did not deny that she slapped AJM for saying something but could not remember ever throwing a plate at her oldest child. She also indicated that she rarely physically disciplines the children.

### Parenting Ability

The jury heard testimony from Linda's co-worker, Anna Sue Wiley, and from "neighbors," Gretchen Crowder and Brenda Brown. All characterized Linda's relationship with KVM as "good" and one of "love, respect, and affection." None of these witnesses were familiar with Grant's relationship with KVM. There is no evidence, however, that KVM's relationship with her father is any different. In fact, Dr. Jameson characterized KVM's relationship with her father as a "normal little-girl, daddy-loving" one. Dr. Jameson testified

that KVM is a "bright, well-balanced and mentally healthy" child, who "has been parented well by both parents." There is no question that Linda has been the primary care-giver and disciplinarian for the children since the divorce. Dr. Jameson admitted that the parent who oversees the day-to-day well-being of the child is the parent most important to the child's development.

## Programs Available

Linda acknowledged that most of the extracurricular activities enjoyed by KVM are located near Grant's home. Grant testified that he scheduled his medical practice to accommodate KVM's activities. In fact, he took extra periods of possession as a convenience to Linda so that he could take KVM to her activities. AJM testified that most of KVM's friends live near his father's home.

## Plans

Although she acknowledged plans to move to California, Linda testified that she would make sure that Grant had as much visitation as possible. She testified that she had no intention of preventing KVM from seeing her father. Linda testified that the move would require KVM to adapt, but that she did not think that would be a problem. Linda noted that the change in climate would help KVM's allergies. Dr. Jameson testified that the move would cause KVM "considerable pain." She admitted, however, that if Linda were to move, now would be the time to do so because KVM has yet to reach adolescence. Grant testified that the move would be detrimental to KVM. AJM testified that he did not want KVM to move to California.

## Stability of the Home

Grant testified that the litigation between he and Linda has been a source of turmoil for the children. There is evidence that, since their divorce, both parties have filed numerous motions seeking to enforce or modify the original decree. Grant admitted that many of his motions were filed simply to retaliate against motions filed by Linda.

## Desires of the Child

At the time of trial, both AJM and KVM were living with Grant as part of his summer period of possession. There is evidence that, before trial, AJM spoke several times to KVM about living with her father, including one time at the specific request of his father. AJM testified that KVM told him that Linda had been shouting at her a lot and that she wanted to live with her father rather than move away. Linda offered into evidence a note from KVM to her mother written a little over a year before trial in which KVM expressed her desire to "always live" with her mother. According to Dr. Jameson, KVM, if forced to choose, desired to live with her father because her father would not shout at her like her mother and she would be near her friends. Dr. Jameson noted that KVM did not get scolded very often at her father's home.

## Acts or Omissions

The jury heard considerable evidence of Grant's failure to comply with the divorce decree. In 1984, Grant interpreted the divorce decree as not requiring child support payments when the children were not residing with Linda. As a result, he withheld payment of child support from Linda. Linda obtained a judgment for two months of unpaid child support totalling $3,499.98. In 1988, Grant reduced child support payments when the eldest son went to live overseas for three months. Grant paid the delinquent amount before the hearing on Linda's motion for contempt. Another time, Grant paid only half of the child support payments. He alleged that this was by agreement with Linda. Again, Grant paid the delinquent amount before the hearing on Linda's motion for contempt.

There is also evidence that Grant did not make timely support payments on the first of the month as required and that he fell behind on his contractual alimony payments. Linda acknowledged that the ma-

jority of support payments were made during the month they were due. There is also evidence that Grant paid other bills, such as expenses of his medical practice and IRS debts, before paying child support, even though Linda relied on these support payments to maintain the household for the children.

The jury also heard testimony about Linda's frequent travels. From 1986 to 1989, Linda took several trips abroad as part of her job as travel agent. As a result, she sometimes left the children with Grant in excess of the period of possession provided in the decree. Grant presented evidence that these trips were not required by Linda's job.

When presented with conflicting evidence, the trier of fact has several alternatives: it may believe one witness and disbelieve others; it may resolve the inconsistencies in the testimony of any witness; and it may accept lay testimony over that of experts. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). The evidence in this case presented the jury with a difficult choice between two loving parents. Confronted with that choice, the jury decided that it was in the best interest of the child that Linda be named sole managing conservatorship. We are not in a position to second-guess the jury. Having thoroughly reviewed the record, we find the evidence legally and factually sufficient to support the jury's verdict. We overrule Grant's first point of error.

■ In his second point of error, Grant contends that the trial court erred in splitting the custody of AJM and KVM because Linda failed to show clear and convincing reasons for split custody. Grant intertwines this contention with the argument that Linda failed to show by clear and convincing evidence that split custody of AJM and KVM was proper.

Courts have held that the custody of two or more children of the same marriage should not be divided, absent clear and compelling reasons. *See Pizzitola v. Pizzatola*, 748 S.W.2d 568, 569 (Tex.App.—Houston [1st Dist.] 1988, no writ) (and cases cited therein); *See also Wristen v.*

*Kosel*, 742 S.W.2d 868, 870 (Tex.App.—Eastland 1987, writ denied). The Family Code, however, does not require a party to show clear and compelling reasons for splitting custody nor does it require a party to prove by clear and convincing evidence that split custody is proper. *Id.* Rather, as previously noted, "the best interest of the child *shall always* be the primary consideration of the court in determining questions of managing conservatorship" TEX. FAM.CODE ANN. § 14.(a) (emphasis added).

■ Linda was only required to prove by a preponderance of the evidence that naming her sole managing conservator was in the best interest of KVM. *Wristen,* 742 S.W.2d at 870. Split custody is simply a factor, among many, to consider in determining the best interest of the child. In this case, AJM chose his father as his sole managing conservator pursuant to section 14.07. We do not agree with Grant that that somehow elevates Linda's burden of proof. If we were to accept Grant's argument, then Linda, in the absence of clear and compelling reasons, would be forced to contest AJM's election under section 14.07 or relinquish custody of KVM, regardless of whether those actions are in the best interest of her children. That result is contrary to the dictates of the Family Code. Linda properly carried her burden of proof and the trial court properly named her sole managing conservator of KVM in accordance with the jury's findings. We overrule Grant's second point of error.

In his third point of error, Grant contends that the trial court erred in failing to maintain the status quo with regard to the managing conservatorship of KVM. Grant argues that the evidence is insufficient to support a finding that either he or Linda should be sole managing conservator of KVM and, therefore, the court should have maintained the status quo by ordering a joint managing conservatorship of KVM. Not only is this argument duplicative of Grant's first point of error, it is totally without merit. Both parties judicially admitted in their pleadings to a change in

circumstances pursuant to section 14.081. We overrule Grant's third point of error.

■ In his fourth and fifth points of error, Grant contends, without reference to authority, that the trial court erred in modifying the divorce decree to allow Linda and KVM to reside at a distance greater than one hundred miles from their present residence.

The original divorce decree provided that Linda could not move the residence of the children more than one hundred miles from the present residence absent an agreement of the parties, or court approval. The trial court's final order specifically removed that restriction. It also named Linda sole managing conservator and Grant possessory conservator of KVM. A parent who is appointed sole managing conservator has all of the rights, privileges, duties, and powers of a parent to the exclusion of the other parent, including the right establish the legal domicile of the child. TEX.FAM. CODE ANN. § 14.02(a) (Vernon Supp.1991). That right is subject to the rights, privileges, duties and powers of a possessory conservator and to any court orders allowing access to the child. *Id.* It is also subject to section 14.031(a) of the Family Code, which provides that a sole managing conservator must give to every other person who has possession or access to the child notice of a change in residence. TEX. FAM.CODE ANN. § 14.031(a) (Vernon Supp. 1991). Linda testified that she was attempting to sell her home and was considering a move to California. She has every right to do so and to take KVM with her, provided she complies with the dictates of sections 14.02(a) and 14.031(a). We overrule Grant's fourth and fifth points of error.

Linda also presents two cross-points. By her first cross-point, Linda contends that the trial court erred in overruling her motion for judgment notwithstanding the verdict with regard to attorney's fees.

■ In order for a trial court to disregard a jury's findings and to grant a motion for judgment notwithstanding the verdict, it must be determined that there is no evidence upon which the jury could have

made the findings relied upon. *Naverette v. Temple Indep. School Dist.*, 706 S.W.2d 308, 309 (Tex.1986).

■ Linda's attorney testified that the reasonable and necessary attorney's fees for the preparation and trial of this cause was $3,075.00 ($150 per hour × 20 hours), plus $1,500 for each day of trial for a total of $9,075.00. The jury, however, was not asked merely to determine the reasonable and necessary attorney's fees for the preparation and presentation of Linda's case. Rather, it was asked to determine how much of Linda's reasonable and necessary attorney's fees should be paid by Grant. In question no. 3 of the charge, the jury was asked as follows: "what sum of money do you find from a preponderance of the evidence to be a reasonable fee for the value of attorney's services necessary for the prosecution of this suit by Linda Ann MacDonald *to be paid by Donald Grant MacDonald to be applied toward the attorney's services rendered to Linda Ann MacDonald.*" (Emphasis added). In other words, the jury was free to require Grant to pay all or only part of Linda's reasonable and necessary fees. Linda made no objection to the charge regarding the form of question no. 3.

The jury answered question no. 3 that Grant should only pay $1,000.00 of Linda's attorney's fees. The jury subsequently determined in question no. 4 that Grant "acted in good faith and with probable cause in the prosecution of this suit." Given the nature of the question and that evidence must be viewed in the light most favorable to the jury finding, we hold that there is more than a scintilla of competent evidence to support the jury's finding. *706 S.W.2d at 309.* Thus, the trial court properly overruled Linda's motion.

■ Linda also contends that the trial court should have awarded her additional attorney's fees as costs pursuant to TEX. FAM.CODE ANN. § 11.18(a) (Vernon 1986). This contention was not made a point of error in her appellate brief and is thereby waived. *Jones v. Liberty Mutual Ins. Co.*, 733 S.W.2d 249, 251 (Tex.App.—El Paso

1987, writ granted), *rev'd on other grounds,* 745 S.W.2d 901 (Tex.1988); Tex. R.App.P. 74(d). We overrule Linda's first cross-point.

In her second cross-point, Linda requests damages pursuant to Tex.R.App.P. 84. We have thoroughly reviewed the record and find that this appeal was taken with sufficient cause and not for purposes of delay.

We overrule Linda's second cross-point. Accordingly, we affirm the judgment of the trial court.