Karen **ENRIQUEZ**, Appellant,

v.

Thomas G. **KRUECK**, Appellee.

No. 04–93–00699–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 19, 1994.

William J. Kolb, Law Offices of William J. Kolb, Corpus Christi, for appellant.

Lanette Smith Joubert, Corpus Christi, for appellee.

Before BUTTS, LOPEZ and HARDBERGER, JJ.

## OPINION

BUTTS, Justice.

A mother appeals a modification to a child custody order which appoints her and the father as joint managing conservators, and gives the father primary custody and control. Previously, the divorce court appointed the mother the sole managing conservator.

Karen Enriquez, appellant, alleges error in the sufficiency of the evidence to support the change of conservatorship. We reverse and remand.

Karen and Tom divorced on September 9, 1991 in Alice, Texas when Kevin was eighteen months old. The divorce decree states that Karen and Tom agreed that Karen be appointed the sole managing conservator.

Tom sought to modify the parent-child relationship on September 15, 1992. Following a contested hearing, the trial court appointed Tom and Karen joint managing conservators, and awarded Tom primary custody and control over Kevin. Karen appeals from that order.

The trial court filed its finding of fact and conclusions of law. In five points of error, Karen argues that the trial court erred because there was insufficient evidence to support the change of conservatorship from sole managing conservatorship to joint managing conservatorship pursuant to TEX.FAM.CODE ANN. § 14.08.[2] After carefully reviewing the record, we agree with appellant.

### Rules Governing Change of Custody

TEX.FAM.CODE ANN. § 14.08(c) (Vernon Supp.1994) provides for modifying the terms and conditions for possessions of or access to a child. Section 14.08(c)(5) specifically sets forth the requirements for replacing a sole

2. All references are to the Texas Family Code, TEX.FAM.CODE ANN. (Vernon 1986 & Supp.1994), unless otherwise indicated.

managing conservatorship with a joint managing conservatorship.[3] Section 14.08(c)(5) provides as follows:

> (c) After a hearing, the court may modify an order or portion of a decree that:
>
> (5) designates a sole managing conservator if a parent of the child requests appointment as a joint managing conservator,[4] and the court finds that:
>
> (A) the circumstances of the child or the sole managing conservator have materially and substantially changed since the rendition of the order or decree to be modified; and
>
> (B) retention of a sole managing conservatorship would be detrimental to the welfare of the child; and
>
> (C) the appointment of the parent as a joint managing conservator would be a positive improvement for and in the best interest of the child.

TEX.FAM.CODE ANN. § 14.08(c)(5) (Vernon Supp.1994).

Further, Tom indicates section 14.021(e) factors are also determinative here. First, however, the three section 14.08(c)(5) custody modification factors must be met. *See Gaona v. Gaona,* 627 S.W.2d 821, 823 (Tex. App.—San Antonio 1982, no writ).

■ Finally, we are always mindful that the best interest of the child is the primary consideration of the court in determining questions of managing conservatorship. TEX. FAM.CODE ANN. § 14.07(a) (Vernon Supp. 1994). Best interest is determined by the case as a whole. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982). Again, we must first examine the section 14.08(c)(5) threshold inquiry before examining this issue. *See Gaona,* 627 S.W.2d at 823.

### Standards of Review

■ This court must review the record for legal and factual sufficiency of the three modification factors: material change of circumstances, retention is detrimental, and the new appointment is a positive improvement for the child. TEX.FAM.CODE ANN. § 14.08(c)(5) (Vernon Supp.1994). This test must be proved by a preponderance of the evidence. TEX.FAM.CODE ANN. § 11.15(a) (Vernon 1986); *MacDonald v. MacDonald,* 821 S.W.2d 458, 463 (Tex.App.—Houston [14th Dist.] 1992, no writ).

■ First, we address appellant's legal sufficiency claims. When reviewing a "no evidence" challenge, the reviewing court is required to consider only that evidence which supports the trial court's finding. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992); *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). If there is any evidence of probative value supporting the finding, we must uphold the finding and overrule the point of error. *Id.* Accordingly, if there is no more than a scintilla of evidence to support a finding, then there is no evidence. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987).

■ Next, if the finding is supported by legally sufficient evidence, we must address appellant's factual insufficiency claims. In considering appellant's factual insufficiency points, we assess all the evidence and reverse only if the challenged finding is so weak as to be clearly wrong and manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ Further, we are mindful that the trial court has wide discretion in determining what serves the best interest of the child. *Thompson v. Thompson,* 827 S.W.2d 563, 566–67 (Tex.App.—Corpus Christi 1992, writ denied). The test for abuse of discretion is whether the trial court's act was arbitrary or unreasonable. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990) (per curiam).

---

**3.** We note that both parties erroneously state that the three prong test at section 14.08(c)(1), rather than (c)(5), applies. However, (c)(1) applies where the trial court appoints a new *sole* managing conservator. Here, the trial court appointed the parties *joint* managing conservators.

**4.** Tom requested that he be named "managing conservator," without specifying sole or joint. We understand this to be an alternative request to be named either a joint managing conservator or a sole managing conservator. *See* TEX.FAM. CODE ANN. § 14.01 et seq.

## REVIEW OF RECORD

Tom presented seven witnesses on his behalf. Much of their testimony focused on (1) Karen's move from Alice, where Tom still lives, (2) Karen's parenting of her eldest daughter, Leona, and (3) an incident when Karen went to San Antonio overnight and left Kevin in his half-sisters' care. Karen has primary custody of two daughters that are not related to Tom, Leona and Christina, who lived with her and Tom when they were married.

Allen French, assistant principal for Alice High School, testified first. Mr. French testified regarding Leona's school performance during the 1991–1992 school year, the year following the divorce. Leona was approximately fourteen at the time. Mr. French stated that Leona's school attendance and grades dropped after Karen's and Tom's divorce. Mr. French further testified that he was concerned Leona presented a truancy problem, and that he once recommended possible action to the truancy officer. Leona was spending time with boys who had a reputation for drinking, rather than her usual peers.

During both direct and cross examinations, Mr. French stated that Karen expressed real concern when he spoke with Karen regarding Leona. During cross examination, Mr. French acknowledged that Leona was a teenager when these problems occurred and that they are common teen problems.

Tom testified next. Tom is the assistant Superintendent for the Alice School District. Tom testified that he agreed for Karen to be the managing conservator, in part, because he believed that Karen would remain in Alice for at least a few years after they divorced. Karen moved from Alice nearly one year after the divorce; first to the Houston area and then to Corpus Christi. Tom testified that he had frequent contact with Kevin before Karen moved, and much less after she moved. He also testified that Karen accommodated his visitation with Kevin.

Tom testified that he believed Karen left her two girls home without adult supervision. Next Tom testified regarding his concern that Karen drank alcohol and that he believed she was sometimes "hung over." Tom then testified regarding his caretaking of Kevin, including bathing, feeding, traveling and outings.

Tom focused on an incident which occurred on June 5, 1992 when Kevin was two and one-half years old. Tom testified that Karen went out of town to San Antonio and left Leona and Christina, then fifteen and twelve respectively, in charge of Kevin. Tom stated that the phone was broken where the girls and Kevin were staying. Further, a friend told him that an unidentified teenage boy was also at the house.

Tom acknowledged that he smoked marihuana regularly, but that he quit doing so in June of 1992. Tom further testified, on cross examination, that he had been married and divorced three times. Also, he has two boys from a previous marriage with whom he has minimal contact. Tom acknowledged that he has not seen Karen "stupid with drink."

On re-direct examination, Tom testified that Leona may have been sexually active when she was fourteen. He stated that Karen assisted Leona with obtaining a prescription for birth control pills.

Four witnesses then testified regarding Tom's abilities as a parent and his close relationship with Kevin: (1) Rev. Henry Aclin, (2) Ms. Thelma Gallimore, (3) Ms. Sylvia Zamora, and (4) Ms. Billy Grose. Rev. Aclin is a retired Presbyterian minister and counselor. Although he met with Tom professionally previously, their current relationship is as friends. Rev. Aclin described Tom's and Kevin's relationship as "very, very good." He stated, during both direct and cross examinations, that because he does not know Karen, he is not in a position to know who would be the best parent for primary custody of Kevin.

Ms. Gallimore, Ms. Zamora, and Ms. Grose, all three employees of Alice Independent School District, testified that Tom and Kevin share a strong relationship. Ms. Gallimore did not testify regarding whether she knows Karen; Ms. Zamora and Ms. Grose testified that although they know Karen, they have not seen her since Karen and Tom divorced.

Tom's final witness, Ms. Adelyne Pittman, testified that she has known both Tom and Karen for approximately four or five years. Ms. Pittman's testimony failed to make clear how she knows the parties and the true depth of her friendship with either one. Ms. Pittman testified that, in her opinion, Karen dressed "inappropriately" in shorts and skirts which Ms. Pittman considered too short. Ms. Pittman also testified that she believes Tom is a better parent than Karen for two reasons, without providing any examples or events to support her opinion. First, she believes that Tom is more stable than Karen. Second, Ms. Pittman vaguely stated that Karen had been previously married.

Karen testified on her own behalf. Karen, a former school teacher with a bachelor's and master's degree, does not currently work outside the home. Karen has remarried since her divorce from Tom; she married Mike Enriquez in July, 1992.

Karen's testimony confirmed that initially after the divorce, Karen remained in Alice and Tom visited Kevin frequently. Karen stated that she originally planned to remain in Alice after the divorce, at least until Leona completed high school.

Karen then moved from Alice to the Houston area approximately one year after the divorce. Karen currently resides in Corpus Christi with her husband and daughters; at the time of the hearing, Kevin also lived with them in Corpus Christi. Karen acknowledged that the increased distance made visitation between Tom and Kevin more difficult, but that she assisted, including meeting Tom midway in Victoria.

Karen testified regarding parenting Leona and Christina. Karen testified that following the divorce she attended a parenting class and read handouts. Christina is a very good student, taking advanced courses. Karen discussed some of her difficulties with Leona. Karen testified regarding her meeting with Mr. French, and that she was very concerned to discover Leona had been skipping classes. Also, she acknowledged that she sought birth control prevention for Leona after she discovered that Leona had been sexually active.

Karen further testified that she believes she is a good parent. Karen stated that she provides a stable home life for her children. She believes that the two moves have not adversely affected her children. Karen described her close bond with Kevin and that she breast fed him for two years. She then described her daily and weekend activities and outings with Kevin. Karen acknowledged that she had an occasional drink (but not when she was breast feeding), but denied any kind of alcohol related problem. Karen expressed concern with Tom's marihuana habit and that Kevin has imitated Tom smoking.

Karen further testified regarding the San Antonio incident. She believes that she made acceptable arrangements for Kevin by leaving him with his two half-sisters, who babysit for others. She was not concerned that the phone was broken because she had made arrangements with neighbors. Further, this was an atypical incident—she is generally home with Kevin.

Karen responded to Ms. Pittman's remarks regarding inappropriate dress by explaining that she is a jogger and jogging shorts are generally shorter. Also, Karen teaches aerobics and wears leotards.

On cross examination, Karen acknowledged that she occasionally left her daughters home alone overnight, during the period following the divorce and prior to marrying Mike. However, she did so only when Kevin was with Tom. She also maintained constant telephone contact with her daughters when she was gone.

### Discussion

As previously discussed, Tom must show (1) a material change in circumstances, (2) keeping Karen as the sole managing conservator will be detrimental to Kevin, and (3) that Tom's appointment as a joint managing conservator would be a positive improvement for and in the best interest of Kevin. TEX. FAM.CODE ANN. § 14.08(c)(5) (Vernon Supp. 1994). All three factors need be present; it is not sufficient to prove only one or two factors. *Id.*

**Material Change in Circumstances:** In point of error two, Karen argues that the evidence is legally and factually insufficient to show a material change in circumstances. However, section 14.08(i) statutorily satisfies this first factor.

■■■ Section 14.08(i) provides that an existing sole managing conservatorship created after September 1, 1987 (the effective date of court ordered joint managing conservatorships in Texas), such as the one here, necessarily gives rise to a "material and substantial change of circumstances," which is the power of the court to order a joint managing conservatorship. TEX.FAM.CODE ANN. § 14.08(i) (Vernon Supp.1994).

Point of error two is overruled.

**Detrimental to Child:** In point of error four, Karen argues that the evidence is legally and factually insufficient to establish the second finding, that her retention as sole managing conservator would be injurious to Kevin.

Section 14.08(c)(5)(B) requires that the trial court find retention of Karen's sole managing conservatorship would be "detrimental" to Kevin's welfare. Neither the Texas Family Code nor case law have yet defined "detrimental," though its use signals a different meaning than "injurious." As noted at a family law institute following the addition of subsection (c)(5):

> [U]nlike injuriousness, we have no hints from caselaw or the legislature as to exactly what detriment means. We can only guess that it is [a] burden that is less than showing injuriousness and more than "best interest."

Mary Johanna McCurley, *Conservatorship Modifications: From Sole to Joint and Back Again*, in S.TEX.FAM.L.INST., E–8 (1990).

The trial court, found that retention of Karen would be "injurious" based on the San Antonio incident. The trial court summarized its concern:

The retention of [Karen] as the sole managing conservator would be injurious to the welfare of the child. On June 5, 1992, [Karen] left [Kevin], who was 3 years old, alone with her daughters from a prior marriage who were 15 and 12 at the time while [Karen] left Alice, Texas, and went to San Antonio, Texas, a two hour drive away. The children had no adult supervision. The children had no operative telephone in the home, no transportation (and no licensed driver) and no way to contact [Karen] for over 24 hours.

The trial court also appears to rely on its finding that Tom's visitation was limited after Karen moved from Alice as further support that retaining Karen as the sole managing conservator would be injurious to Kevin.

■■■ We question whether the San Antonio incident and Tom's reduced visitation is more than a scintilla of evidence to support finding that Karen's retention as sole managing conservator would be *detrimental* to Kevin. However, we find the San Antonio incident, standing alone, is factually insufficient to show that retaining Karen as the sole managing conservator is *detrimental* to Kevin. Though adult supervision is typically preferable, there is no evidence to show that Leona and Christina could not properly babysit Kevin overnight. Many teenagers effectively babysit.

■■■ Further, the reduced visitation is factually insufficient evidence to support this factor under the circumstances presented here. Otherwise, appellee's argument, taken to its logical conclusion, means divorced parents would be forced to remain in one town and not move until their children became adults.

In *Guy v. Stubberfield,* on which Tom relies, the court stated that the mother used the child as a "pawn," which is not the situation here. *Guy v. Stubberfield,* 666 S.W.2d 176, 180 (Tex.App.—Dallas 1983, no writ). *Guy* is further distinguishable because there the parties *agreed* to equal custody [5] and the

5. We disagree with Tom's statement that "[i]t is uncontroverted that Karen *agreed* at the time of the divorce to stay in Alice for at least four years." (emphasis added). Instead, the evidence shows that though the parties anticipated such an arrangement, there was no agreement. The trial court found, "the parties *anticipated* that [Karen] would live in Alice...." (emphasis added).

parties did not address a restraint on domicile.

We hold that the evidence is factually insufficient to show that the retention of Karen as the sole managing conservator would be detrimental to Kevin. Accordingly, that portion of point of error four regarding factual sufficiency is sustained.

**Positive Improvement:** In point of error five, Karen argues that the evidence is legally and factually insufficient to show a change in conservatorship would be a positive improvement for Kevin. The trial court found that both (1) granting a joint managing conservatorship and (2) appointing Tom as the joint managing conservator with primary custody and control is a positive improvement for Kevin because "[Tom] has the ability to give first priority to the welfare of [Kevin]."

While there is some evidence that a change in conservatorship would be a positive improvement for Kevin, proof of all three factors is necessary to satisfy section 14.08(c)(5).

### Conclusion

■ We have reviewed the entire record and find there is factually insufficient evidence to support the trial court's order that modified Karen's designation as sole managing conservator. Specifically, Tom failed to sufficiently prove that retaining Karen as the sole managing conservator would be detrimental.

Further, although the trial court observed all the witnesses and heard the testimony and, it is presumed, did not make its decision lightly, section 14.08(c)(5) ‘ requires strict compliance by the trial court.

Since a portion of point of error four is sustained, we need not specifically address the remaining points.

The trial court's order is reversed and the case is remanded for appropriate proceedings.