Kathy Diane TURNER, Appellant,

v.

Tommy Lamar TURNER, Appellee.

No. 01–99–01438–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 17, 2001.

Lawrence S. Rothenberg, Houston, for Appellant.

William B. Connolly, Houston, for Appellee.

Panel consists of Justices WILSON, HEDGES, and SMITH.*

## OPINION

HEDGES, Justice.

This is an appeal from an order granting a motion to modify conservatorship in a suit affecting the parent-child relationship. We affirm.

## Background

Appellant Kathy Diane Turner (Mother) and appellee Tommy Lamar Turner (Father) were divorced on November 9, 1995. The final decree of divorce named Mother sole managing conservator and Father possessory conservator of their 14–year-old daughter, Aeriel.

About 17 months later, in April 1997, Mother leased out her home and moved in with her brother. At that time, Aeriel moved in with Father. In October 1997, about six months later, Mother reconciled with Father and moved into his home, where Aeriel had already been living. Mother, Father, and Aeriel lived together in Father's home for about nine months. On July 1, 1998, Mother moved out of Father's home and into her own apartment. Aeriel then lived back and forth between both parents, staying two weeks with each.

In 1999, Father filed a motion to modify, seeking modification of the sole managing conservatorship to a joint managing conservatorship. Specifically, he requested that the court remove Mother as the sole managing conservator and appoint both Father and Mother as joint managing conservators. He sought to be primary joint managing conservator, with the right to determine the child's residence and domicile.

The trial court named Father temporary joint managing conservator, after which Aeriel lived exclusively with him. Mother and Father testified at the hearing on the motion to modify. About a month later, the trial court conducted an in-chambers interview with Aeriel, wherein she reiterated her desire to live with Father. On September 20, 1999, the trial court granted Father's motion to modify and appointed him joint managing conservator.

Mother appeals the order in four points of error, arguing that the trial court abused its discretion in granting Father's motion to modify because the evidence was insufficient to support: (1) the order; (2) the finding that the retention of Mother as sole managing conservator would be detrimental to the welfare of the child; (3) the finding that the appointment of Father as

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

joint managing conservator would be a positive improvement and in the best interests of the child; and (4) other various findings of fact and conclusions of law.

### Standard of Review

■■■■ We give wide latitude to a trial court's decision on custody, control, possession, and visitation matters. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Voros v. Turnage*, 856 S.W.2d 759, 765 (Tex.App.—Houston [1st Dist.] 1993, writ denied). We will reverse the trial court's order only if it appears from the record as a whole that the trial court abused its discretion. *Gillespie*, 644 S.W.2d at 451. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *Graves v. Graves*, 916 S.W.2d 65, 68–69 (Tex. App.—Houston [1st Dist.] 1996, no writ).

### Modification of Conservatorship

The modification requirements depend on whether the parent seeks to supercede a sole managing conservator, simply change the terms of a joint managing conservatorship, replace a joint with a sole managing conservatorship, or replace a sole with a joint managing conservatorship. *See generally* TEX. FAM.CODE ANN. §§ 156.101–.203 (Vernon 1996). In this case, Father seeks to replace the sole managing conservatorship with a joint managing conservatorship. On a parent's request, the trial court may modify a sole managing conservatorship to a joint managing conservatorship if the court finds:

(1) the circumstances of the child or the sole managing conservator have materially and substantially changed since the rendition of the order;

(2) retention of a sole managing conservatorship would be detrimental to the welfare of the child; and

(3) the appointment of the parent as a joint managing conservator would be a positive improvement for and in the best interest of the child.

TEX. FAM.CODE ANN. § 156.104 (Vernon 1996).[1]

Mother does not dispute the first prong regarding a material and substantial change in circumstances. We therefore review the record with regard to the remaining two modification factors (1) retention of sole managing conservatorship would be detrimental to the child's welfare and (2) appointment of joint managing conservator would be positive improvement for and in the child's best interest.

### (1) Retention is Detrimental to Child's Welfare

Mother contends that the trial court abused its discretion in finding that her retention as sole managing conservator would be detrimental to the welfare of the child under Family Code section 156.104.[2]

1. There is a rebuttable presumption that a joint managing conservatorship would be in the child's best interest. TEX. FAM.CODE ANN. § 153.131(b) (Vernon 1996). However, a modification from a sole to a joint managing conservatorship, as in this case, requires the additional element that retention would be detrimental to the child's welfare. TEX. FAM. CODE ANN. § 156.104(a)(2) (Vernon 1996). It appears, therefore, that it may be more difficult to modify from sole to joint than from sole to sole-despite the presumption in favor of a joint managing conservatorship. While we note this inconsistency, we are nonetheless required to follow the law set forth in the Family Code.

2. Before 1995, the predecessor to section 156.101, which contains the grounds for modification of a sole managing conservatorship, required the modifying parent to prove that retention would be "injurious" to the welfare of the child. Act of May 28, 1989, 71st Leg., R.S., ch. 371, sec. 6, § 14.08(c)(1), 1989 Tex.

The Family Code does not define "detrimental to the welfare of the child." *See generally* TEX. FAM.CODE ANN. §§ 156.001–.409 (Vernon 1996 & Supp.2001). Nor does the Code list factors that a trial court must consider in deciding whether these terms are fulfilled. *See id.* Likewise, appellate court opinions on custody issues do not articulate clear definitions, but instead focus on factual distinctions in determining whether the trial court abused its discretion. *See, e.g., Gillespie,* 644 S.W.2d at 451. Under these vague guidelines, we turn to the facts contained in this record.

■ Aeriel testified during the in-chambers interview that she and Mother argue quite often, do not get along well, and have problems communicating. She explained that it would be emotionally difficult for her to live with Mother because Mother "didn't know if she could have a strong relationship with [Aeriel] because [Aeriel] hurt her by not wanting to be with her." The following is an excerpt from the in-chambers interview:

The Court: Why don't you want to live with your mom?

The Child: Because I don't feel like—we don't get along that well. And I don't feel like there's a connection between us. I can't talk to her about a lot of things, but I just feel more comfortable with my dad. And I have a lot more fun with my dad.

The Court: What do you think would happen to you, Aeriel, as a person and as a student if you had to continue—had to go back living with your mom? ... Both your grades and how you feel inside. And how would it effect you emotionally / mentally?

The Child: I would be upset because I'm not with my dad, and that's who I really want to be with. But, grade-wise, I think that my grades would still be up.

The Court: Would it be bad for you to live with your mom?

The Child: It wouldn't be bad; but it would be hard for me emotionally, yeah. Because she asked me if I really wanted to live with my dad. I told her that I did. She said that she didn't know if she could have a strong relationship with me because I have hurt her by not wanting to be with her. I asked her, "If I did, you wouldn't want to have a relationship with me?" She said that she wasn't for sure, but she didn't know how she would feel about it. That upset me really bad, that breakdown right there. That's putting me even more on the spot that I might not have a relationship with my mom at all. I still want to have a relationship with her. But I, also, want to be happy. Since I've been living with my dad, I go back over there every other weekend and on Wednesday. Me and her have been getting along good. It gives me a break and her a break from me. It's like a fresh start again. You know what I mean? So we get along well.

The significant theme of Mother's defense was that Aeriel's school grades declined while she lived with Father pursuant to the court's temporary order. Mother argues that Aeriel's problems arose because Father did not monitor her school work. In contrast to Mother's allegations, however, Aeriel explained that her poor performance the previous semester was due to her arguments with Mother, which arose because Mother was unhappy with Aeriel's desire to live with Father. Aeriel explained that those argu-

Gen. Laws 1462, 1464 (former TEX FAM.CODE § 14.08(c)(1), since repealed).

ments negatively impacted her school work, as follows:

> The Court: What happened last semester?
>
> The Child: Last semester there was a lot of pressure on me because whenever I was talking to my mom she wasn't happy. She didn't understand why I went with my dad. So, I went over there. And we were always arguing a lot about coming here and why I don't want to live with her. And my mind wasn't on my work.

While Mother testified that she helped Aeriel with school work, Aeriel stated that Mother helped her only one weekend to study for an exam. When the school called Mother to inform her that Aeriel did not return her progress report regarding problems in certain subjects, Mother did not talk to Aeriel or her teachers. Nor did she inform Father of the telephone call.

Mother testified that she was uncertain whether Father helped Aeriel with homework. In contrast, however, Aeriel testified that Father helped her with homework, looked over her homework at night to ensure it was complete, and encouraged her to seek tutoring if she had difficulty. Father testified that he disciplined Aeriel for her poor grades and for not showing the progress report to him and Mother. Father described his plans for the following school year to keep current with classes and teachers to avoid these problems in the future. These plans included a written form, which would allow him to contact teachers and to be informed about class work, homework, quizzes, tests, and projects for every subject. He also made arrangements with the cheerleading spon-

sor to provide tutoring and to immediately contact him regarding any problems.

The evidence showed that Aeriel's grades subsequently improved. In the in-chambers interview, the trial court noted that her grades for the first few weeks of the new semester "are really good." The court asked her to promise to maintain her grades if she continues to live with Father. She agreed.

Additionally, Father filed a choice of managing conservator, which was admitted into evidence at trial, that designated Father as Aeriel's choice for managing conservator. Mother objected at trial that the document was not notarized.

■ Former section 153.008, the rule governing at the time, states as follows:

> If the child is 12 years of age or older, the child may, by writing filed with the court, choose the managing conservator, subject to the approval of the court.[3]

There is no requirement that the writing be in affidavit form before it may be considered by the judge. Nor is there a specific provision that the writing made by the child be received into evidence. *See Boriack v. Boriack*, 541 S.W.2d 237, 240 (Tex.App.—Corpus Christi 1976, writ dism'd). Moreover, any error in admitting the document in evidence would be harmless because other evidence was admitted during the trial, including the Aeriel's testimony during the in-chambers interview, regarding her preference for Father as custodian. *See id.*

Father testified that he has "no major objections" to Mother's parenting skills. Mother explained that Aeriel wanted to live with Father, and not her, simply because she is the stricter parent. Accord-

---

**3.** Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, sec. 1, § 153.008, 1995 Tex. Gen. Laws 113, 148 (former TEX. FAM.CODE § 153.008, since amended). Effective September 1, 1999, sec- tion 153.008 was amended, changing age "12" to "10." TEX FAM.CODE ANN. § 153.008 (Vernon Supp.2001).

ingly, Mother argues that Aeriel's mere desire to live with Father is insufficient to show a detriment to the child's welfare.

Mother cites *Enriquez v. Krueck*, which reversed the trial court's custody order modifying from a sole to a joint managing conservatorship. 887 S.W.2d 497 (Tex. App.—San Antonio 1994, no writ). The San Antonio Court of Appeals held that the trial court abused its discretion in modifying the order because the father failed to establish a detriment to the child's welfare. *Id.* In *Enriquez,* the mother left the three-year-old child alone at home overnight with her daughters from a prior marriage who were then 15 and 12 years old. *Id.* at 502. The daughters had no operative telephone at home, no transportation, no licensed driver, and no way to contact the mother for over 24 hours. The court noted that "adult supervision is typically preferable," but "[m]any teenagers effectively babysit." *Id.* Additionally, the court held that the reduced visitation with the father was insufficient to establish detriment to the child's welfare. *Id.* at 503. Otherwise, "parents would be forced to remain in one town and not move until their children became adults." *Id.* Thus, the evidence in *Enriquez* was insufficient to show that retaining the sole managing conservator would be detrimental. *Id.*

As noted in *Enriquez,* neither the Family Code nor case law has yet defined "detrimental." *Id.* at 502. As in many appellate court opinions on custody issues, *Enriquez* did not articulate a clear definition, but instead focused on specific facts in determining whether the trial court abused its discretion. *See id.* Likewise, we focus on the unique facts in this case.

We agree with Mother's contention that a child's mere desire to live with the other, more lenient parent would be legally insufficient standing alone to prove that a re-

tention of the sole managing conservator would be detrimental to the child's welfare. However, in addition to the evidence set forth above, it is important to note that Aeriel actually lived with Father for quite some time, with the apparent approval of Mother, even while Mother was sole managing conservator.

In April 1997, about 17 months after the parties divorced, Mother moved out of her home and in with her brother. At that time, Aeriel moved in with Father. About six months later, Mother moved into Father's home to live with Father and Aeriel. On July 1, 1998, about nine months later, Mother moved out of Father's home and into an apartment. Aeriel then lived with both parents, staying two weeks with each. After the trial court named Father temporary joint managing conservator, Aeriel began living exclusively with him.

At the modification hearing, the trial court commented on the living situation as follows:

I also don't think it is fair where you have a situation where the child has actually been living with the father at least most or half the time for almost three years and to come in and say you can't modify sole managing conservator. I understand the statute says that, but I think it is pretty ridiculous in this case. Clearly these parents have been operating as joint managing conservators so I hear your legal arguments and I think your interpretation of the statute has been validated by appellate court [sic], but I don't think it would be a just outcome in this situation.

■■■■ A trial court has wide discretion in determining the best interests of the child. *Gillespie,* 644 S.W.2d at 451. With regard to the terms and conditions of conservatorship, the trial court is in the "best position to observe the demeanor and per-

sonalities of the witnesses and can feel forces, powers, and influences that cannot be discerned by merely reading the record." *E.C., Jr. ex rel. Gonzales v. Graydon*, 28 S.W.3d 825, 829 (Tex.App.—Corpus Christi 2000, no pet.).

This case is unique because, as the trial court noted, Aeriel had been living with Father "at least most or half the time for almost three years" even though Mother was sole managing conservator. Aeriel's choice to live with Father after living with him for this extended time period, along with the Father's desire for her to live with him, supports the trial court's finding that the retention of Mother as sole managing conservator would be detrimental to the child's welfare, both emotionally and scholastically. We cannot say the trial court abused its discretion in appointing Father joint managing conservator.

**(2) New Appointment is Positive Improvement and in Child's Best Interest**

█ Mother also contends that the trial court abused its discretion in finding that the appointment of Father as joint managing conservator would be a positive improvement for and in the best interest of the child under Family Code section 156.104. The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child. Tex. Fam.Code Ann. § 153.002 (Vernon 1996).

In addition to the evidence set forth above, Aeriel testified that she has problems with Mother and is happier with Father. She explained that living with Father has given the relationship with Mother a "fresh start." The fact that Aeriel lived with Father for an extended time while Mother was sole managing conservator, Aeriel's choice to live with Father, and Father's desire for Aeriel to live with him, supports the trial court's finding that modification would be a positive improvement for and in the best interests of the child. Because there is sufficient evidence to support the order, we cannot say that the trial court abused its discretion.

**Conclusion**

We overrule Mother's points of error. The order of the trial court is affirmed.