Opinion issued October 26, 2006













In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00798-CV




SHEILA RENA PATTERSON, Appellant

V.

CLINT ALLEN BRIST, Appellee




On Appeal from the 245th District Court
Harris County, Texas
Trial Court Cause No. 2004-17094




O P I N I O NThis appeal arises from a suit to modify an order naming one parent as having
the exclusive right to designate the primary residence of C.A.B., the 12–year–old
child of appellant, Sheila Rena Patterson, and appellee, Clint Allen Brist. After a
hearing and an in camera interview with C.A.B., the twelve-year old childof appellant, Sheila Rena Patterson, and appellee, Clint Allen Brist, the trial court ordered that Brist be
appointed joint managing conservator with the right to designate the residence of
C.A.B. On appeal, Patterson asserts that the trial court abused its discretion because
the evidence is legally and factually insufficient to support the trial court’s finding
that it is in C.A.B.’s best interest to reside with Brist.


 We affirm. 
DISCUSSIONUSSIONSection 156.101 of the Family Code, entitled Grounds for Modification of 
Order Establishing Conservatorship or Possession and Access, provides in relevant
part:
The court may modify an order that provides for the appointment of a
conservator of a child, that provides the terms and conditions of
conservatorship, or that provides for the possession of or access to a
child if modification would be in the best interest of the child and:
 
(1) the circumstances of the child, a conservator, or other party
affected by the order have materially and substantially changed since the
earlier of:
(A) the date of the rendition of the order; or
(B) the date of the signing of a mediated or collaborative
law settlement agreement on which the order is based;
 
(2) the child is at least 12 years of age and has filed with the
court, in writing, the name of the person who is the child's preference
to have the exclusive right to designate the primary residence of the
child; or
 
(3) the conservator who has the exclusive right to designate the
primary residence of the child has voluntarily relinquished the primary
care and possession of the child to another person for at least six
months. 

Tex. Fam. Code Ann. § 156.101 (Vernon 2005) (emphasis added).
          Here, C.A.B. has expressed in an affidavit and, presumably, in the in camera
interview with the trial court, his preference to reside with his father. Therefore, the
only issue for us to resolve is whether the trial court abused its discretion in
determining that the change in primary residence was in C.A.B.’s best interests. See
Ellason v. Ellason, 162 S.W.3d 883, 888 (Tex. App.—Dallas 2005, no pet.) (holding,
“AA court may modify an order providing the terms and conditions of conservatorship
if the modification would be in the best interests of the child and the child is at least
twelve years of age and has filed with the court, in writing, the name of the person
who is the child's preference to have the exclusive right to designate the primary
residence of the child.”). 
Standard of Review
          We review a trial court’s decision on custody, control, possession, and
visitation matters for abuse of discretion, and reverse the trial court’s order only if we
determine, from reviewing the record as a whole, that the trial court abused its
discretion. Turner v. Turner, 47 S.W.3d 761, 763 (Tex. App.—Houston [1st Dist.]
2001, no pet.). A trial court abuses its discretion when it acts arbitrarily or
unreasonably, without reference to any guiding rules or principles. Id. We view the
evidence in the light most favorable to the trial court’s decision and indulge every
legal presumption in favor of its judgment. Holley v. Holley, 864 S.W.2d 703, 706
(Tex. App.—Houston [1st Dist.] 1993, writ denied). An allegation of legal or factual
insufficiency is not treated as an independent ground of error in this context because
the appropriate standard of review is abuse of discretion. Hardin v. Hardin, 161
S.W.3d 14, 19 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Sufficiency
challenges are incorporated into an abuse of discretion determination. McGuire v.
McGuire, 4 S.W.3d 382, 387 n.2 (Tex. App.—Houston [1st Dist.] 1999, no pet.). 
Analysis
          The Family Code’s statutory scheme focuses on the children’s welfare and best
interest. Tex. Fam. Code Ann. § 153.002 (Vernon 2005); See Lenz v. Lenz, 79
S.W.3d 10, 14 (Tex. 2002) (reiterating legislature’s mandate that best interest of child
is primary consideration). Courts have generally considered nine non-exclusive
factors set out in Holley v. Adams in determining the best interest of the child. 544
S.W.2d 367 (Tex. 1976). Those factors are (1) the desires of the child; (2) the
emotional and physical needs of the child now and in the future; (3) the emotional
and physical danger to the child now and in the future; (4) the parental abilities of the
individuals seeking custody; (5) the programs available to assist these individuals to
promote the best interest of the child; (6) the plans for the child by these individuals
or by the agency seeking custody; (7) the stability of the home or proposed
placement; (8) the acts or omissions of the parent, which may indicate that the
existing parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions of the parent. Id. at 372. We consider these factors as they relate to this
case. 
          In this case, the trial court heard evidence from both parties supporting the 
conclusion that placing C.A.B in the Brist home would provide a more stable and
emotionally, mentally, and physically supportive environment for C.A.B. than
Patterson’s home. Over the past five years, as he has matured, C.A.B. has developed
a very close relationship with Brist. He has become his father’s “shadow” and is
“very absorbent” of his father’s time. In her testimony in the trial court, Patterson
said that Brist has become C.A.B.’s “best friend.” Both Brist and his present wife,
Stephanie, testified that C.A.B. enjoys participating in outdoor activities with his
father, including mowing the lawn, roping and horseback riding, and playing
baseball. Brist was described as a “very hands on” father, and Brist testified that he
wanted his relationship with C.A.B. to continue to grow. The Court heard testimony
that C.A.B. is very mature for a 12 year old and that after speaking with both Brist
and Patterson, it was also his desire to spend even more time with his father. 
Moreover, the trial court conducted an in camera interview with C.A.B. in which he
apparently expressed a preference for living with Brist. Patterson testified that she
took C.A.B. to her attorney’s office to sign the declaration that he wanted to live with
her, but that C.A.B. would not sign it. Patterson testified that although she disagreed
with Brist regarding where C.A.B. should live, Brist loved and cared for C.A.B. and
only wanted what was best for him. Patterson testified that Brist’s wishes, desires,
and plans for C.A.B. were the same as hers—that C.A.B. grow up to be a well-adjusted child. She also testified that Brist was as good a parent as she was to C.A.B. 
          The Court heard testimony that the Brist home is emotionally stable and could
provide for C.A.B’s needs. Brist testified that there was nothing bad or dangerous to
C.A.B. in the Brist home. C.A.B. has a very good relationship with his father, his two
step-brothers, who are close to his age, and his step-sister. He and his step-brothers
are best friends, and he has developed other friends his own age and close to his age
in the community where Brist lives. He also has a good relationship with Brist’s
relatives. Stephanie Brist testified that their home was very family oriented and that
all the kids participated in extra-curricular activities. Mrs. Brist testified that she
would actively participate with Brist in taking care of C.A.B. and would also take
C.A.B. to his extra-curricular activities after school. Brist testified that, because his
wife is the secretary at the school where C.A.B would attend, they would be able to
be more active in his school activities. 
          The Court also heard testimony that both Brist and Stephanie Brist were
committed to doing what was financially and emotionally best for their family,
including C.A.B. Brist testified that, three years ago, he left a higher paying job with
Colonial Pipeline to become self employed in the pest control business in order to
spend more time with his family. He testified that his job at Colonial Pipeline often
required him to work graveyard shifts and travel. He testified that as a result of this
decision he was now able to work just one mile from home and spend every evening
with his family. Although during the first few years of self employment he has not
made as much money as he did while employed with Colonial Pipeline, Brist testified
that his income has increased every year since he started his business and that he
expected his yearly income to continue to increase. 
          At the hearing, Patterson’s counsel argued that this custody proceeding was
nothing more than an attempt by Brist to avoid paying back and future child support
to Patterson. However, the Court heard testimony that the custody change was
initiated by C.A.B. and was his decision, not Brist’s. The Court also heard testimony
that, although Brist failed to provide continuous insurance coverage for C.A.B. and
had owed back child support, this occurred while he was starting up his new business,
and these issues had been resolved by the time of the custody hearing. 
          While living with Brist, C.A.B. may not be able to participate in the same
college level courses offered by the Goose Creek I.S.D., where he attended school
while living with Patterson. Although Chambers County has honors program courses,
they are not all identical to those in C.A.B.’s current school. Nevertheless, there was
no testimony that his new school in Chambers County was either substandard or that
C.A.B. would not receive a good education. C.A.B. is an honors student who is
active in school activities, and there was no testimony that his level of interest in
education or participation in extra-curricular activities would change if he were to
live with Brist. Patterson admitted that C.A.B.’s happiness was going to be a factor
in how well he performed in school no matter where he went to school. 
          The court also heard testimony regarding the location and physical
arrangements of Brist’s and Patterson’s homes. The court heard testimony that
Patterson’s suburban home was larger than the Brist home, which is located in rural
east Chambers County. Patterson testified that she lived with her current husband in
a subdivision in Baytown. In this home, C.A.B. has his own room and a spare room
that has his video game set up, drums, and other items of leisure. The Court heard
testimony that Brist and his current wife live in a sixteen-foot by eighty-foot mobile
home on a family-owned eight-acre tract. The living arrangements at the mobile
home are as follows: Brist and his wife have the master bedroom, the seven-year-old
daughter occupies her own bedroom, and C.A.B. shares the other bedroom with his
step-brothers. Despite the differences in home size and location, there was no
evidence that the Brist home was unstable or an undesirable place for C.A.B to live.
To the contrary, the court heard testimony that C.A.B. was not unhappy about sharing
a room with his step-brothers or living in a more rural area, and Patterson had no
criticism of the fact that the Brist family made their home in a trailer. 
          The Court heard testimony that neither Brist nor Patterson were perfect parents
and that both had lapses in their parenting skills. Patterson testified that she believed
that Brist, while “not a bad parent,” is sometimes careless about safety issues. She
testified that Brist allowed C.A.B. to drive Brist’s pickup truck on the eight-acre tract
on which his family’s mobile home sits and that Brist allowed C.A.B. and his two
step-brothers to play with firecrackers. She also testified that on one occasion he
forgot to make sure on a visitation week that C.A.B. had his asthma inhaler. 
However, Brist testified that, when his wife informed him that he had forgotten the
asthma inhaler, instead of having her meet him half-way between their two houses to
retrieve the inhaler, he went back to her house to pick it up. On cross–examination,
Patterson conceded that she allowed C.A.B. to stay home unattended all day during
the summer and that she allowed him to ride a motorized vehicle, a scooter, on the
street in their subdivision cul de sac. The trial court expressed concern that C.A.B.
was allowed to stay at home alone during the summer. 
CONCLUSION 
           Viewing all the evidence in a light most favorable to the trial court’s decision,
we cannot say that the trial court’s judgment was arbitrary or unreasonable. 
Accordingly, we hold that the trial court did not abuse its discretion in appointing
Brist as joint managing conservator with the exclusive right to designate C.A.B.’s
primary residence. We overrule appellant’s sole point of error and affirm the
judgment of the trial court. 
 
                                                             Sam Nuchia 
 Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.

Justice Hanks, concurring.

Justice Keyes, dissenting. 

En banc consideration was requested. See Tex. R. App. P. 41.2(c).

A majority of the Court voted to deny en banc consideration. See id.

Justice Jennings, dissenting from the denial of en banc consideration.