COURT OF
APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-149-CV
 
IN THE
 
INTEREST OF M.N.G.
------------
FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY
------------
OPINION
------------
M.N.G.'s paternal grandmother appeals a
trial court order denying modification of conservatorship in a suit affecting
the parent-child relationship. This appeal raises the issue of whether the
United States Supreme Court decision in Troxel v. Granville, 530 U.S.
57, 120 S. Ct. 2054 (2000), altered the necessary showing to obtain modification
of conservatorship under the Texas modification statute so as to render that
statute unconstitutional as applied to M.N.G.'s father. We reverse and remand.
FACTUAL BACKGROUND
M.N.G.'s father and mother were divorced
on January 13, 1989. Father was named sole managing conservator of their son,
M.N.G., who was then two years old. However, Father voluntarily left M.N.G. with
M.N.G.'s grandmother after the divorce, and M.N.G. lived with his grandparents
from that time until the time of trial, when he was fourteen years old.
With the exception of one $50 payment,
neither the father nor the mother provided the grandparents with any financial
support for M.N.G. Due to lack of financial support from the parents,
Grandmother obtained financial support from the State for M.N.G., including
Medicaid and food stamps. On October 24, 1996, the Office of the Attorney
General of the State of Texas filed a Notice of Change of Status and Motion for
Further Orders, seeking that child support payments be made by M.N.G.'s father
and mother to Grandmother, with whom M.N.G. was living.
Grandmother filed a Petition in
Intervention, seeking to modify the original custody decree to appoint her as
M.N.G.'s sole managing conservator. M.N.G. filed an affidavit with the court
stating that he chose Grandmother as his managing conservator. Father opposed
the modification of the decree and sought return of the child to him. Following
a final hearing, the trial court rendered its final order February 15, 2001,
denying Grandmother's request for modification and ordering that M.N.G. be
surrendered to Father immediately.
THE MODIFICATION STATUTE
When the family code was originally
enacted in 1973, modification of sole managing conservatorship was measured by
the test of a material and substantial change in circumstances, coupled with a
best interest test. Act of May 25, 1973, 63rd Leg., R.S., ch. 543, §14.08,
1973 Tex. Gen. Laws 1411, 1425; Bates v. Tesar, 81 S.W.3d 411, 426
(Tex. App.--El Paso 2002, no pet.); Jenkins v. Jenkins, 16 S.W.3d 473,
477 (Tex. App.--El Paso 2000, no pet.). In 1975, an additional prong was added,
requiring a finding that retention of the existing managing conservator would be
"injurious" to the welfare of the child. Act of June 2, 1975, 64th
Leg., R.S., ch. 476, § 29, 1975 Tex. Gen. Laws 1253, 1265; Bates, 81
S.W.3d at 426. In 1995, that requirement was eliminated from the statute when
the "positive improvement" element was added. Act of May 26, 1995, 74th
Leg., R.S., ch. 751, § 47, 1995 Tex. Gen. Laws 3888, 3905-06; Bates, 81
S.W.3d at 426.
The terms of the modification statute at
the time of trial as set forth in the family code provided as follows:

 § 156.101. Grounds for
 Modification of Sole Managing Conservatorship
 
 (a) The court may modify an order that
 designates a sole managing conservator of a child of any age if:
 
 (1) the circumstances of the child,
 sole managing conservator, possessory conservator, or other party affected
 by the order have materially and substantially changed since the date of
 the rendition of the order; and
 (2) the appointment of the new sole
 managing conservator would be a positive improvement for the child.
 
 (b) The court may modify an order that
 designates a sole managing conservator of a child 10 years of age or older
 if:
 
 (1) the child has filed with the
 court in writing the name of the person who is the child's choice for
 managing conservator; and
 (2) the court finds that the
 appointment of the named person is in the best interest of the child.
 
 

Act of May 26, 1995, 74th Leg.,
R.S., ch. 751, § 47, 1995 Tex. Gen. Laws 3888, 3905-06, amended by Act
of May 30, 1999, 76th Leg., R.S., ch. 1390, § 16, 1999 Tex. Gen.
Laws 4696, 4700, amended by Act of May 22, 2001, 77th Leg.,
R.S., ch. 1289, § 5, 2001 Tex. Gen. Laws 3108, 3108-09 (current version at Tex.
Fam. Code Ann. § 156.101 (Vernon 2002)).(1) 
Thus, at the time of the modification proceedings in this case, the statute
required the party seeking modification to prove either that the circumstances
of the child, the sole managing conservator, the possessory conservator, or
other party affected by the original order have materially and substantially
changed, and that appointment of a new managing conservator will be a positive
improvement for the child or that a child ten years of age or older filed a
writing naming the person the child chose as his managing conservator and
appointment of the chosen person as the child's managing conservator is in the
best interest of the child. Id.
THE TRIAL COURT'S FINDINGS
AND CONCLUSIONS
The trial court's findings of fact and
conclusions of law are silent concerning whether there had been a material and
substantial change in circumstances as to the child or any party affected by the
original order or whether modification of conservatorship would be a positive
improvement for M.N.G. Instead, the trial court found that there was
"insufficient evidence to establish that [Father] (a) has, by act or
omission, harmed the child in the past, (b) is in any way unfit as a custodial
parent, or (c) poses an actual or potential threat of physical or emotional harm
to the child as the custodial parent." The trial court included a section
in its findings of fact and conclusions of law entitled "State of the
Law":

        
 This Court recognizes that the current version of § 156.101, Texas Family
 Code, does not include the previously-required proof that retention of the
 current managing conservator would be injurious to the welfare of the child;
 that is, the current statute no longer requires any showing of the custodial
 parent's unfitness or danger to the child.
        
 However, this Court is of the opinion, and finds, that the holding in, and the
 rationale of, Troxel v. Granville, 530 U.S. 57 (Sup.Ct. [sic] 2000),
 as applied in this case, imposes the additional requirement of proof of actual
 or potential harm to the child or of parental unfitness. To consider the
 modification requested by the non-parent intervenor by any lesser standard
 would be an unconstitutional infringement on [father's] right to make
 decisions concerning the care, custody, and control of his son.

 
The trial court then concluded, as a
matter of law, that Grandmother had not presented "sufficient credible
evidence" to demonstrate that father was unfit as a custodial parent or
posed a threat to M.N.G.'s safety.
ISSUES
Grandmother contends the trial court
committed errors of law by imposing requirements of proof of actual or potential
harm or proof of parental unfitness in order for her to establish a right to
modification of custody, rather than following the Texas modification statute,
and in failing to follow In re V.L.K., 24 S.W.3d 338, 342 (Tex. 2000)
(holding the parental presumption does not apply in modification proceedings),
thereby misapplying the statute. See Tex. Fam. Code Ann. § 156.101.
(2) Father responds that the trial court correctly retained him as
sole managing conservator. He argues that the trial court correctly concluded
that the Texas modification statute is unconstitutional, as applied to him,
under Troxel's due process analysis. (3)
U.S. Const. amend. XIV; Troxel, 530 U.S. at 65-67, 120 S. Ct. at
2059-61. He further argues that, when a modification proceeding pits a parent
against a non-parent, the parental presumption must apply as a matter of
constitutional due process. Consequently, Father argues, the trial court
correctly placed the burden on Grandmother to prove either (1) Father's parental
unfitness or (2) actual or threatened harm to M.N.G. by retention of Father as
the managing conservator and that there is insufficient evidence to support
either element to justify awarding custody to Grandmother.
STANDARDS OF REVIEW
A trial court's order modifying
conservatorship is reviewed under an abuse of discretion standard. Gillespie
v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); In re T.D.C., 91
S.W.3d 865, 872 (Tex. App.-- Fort Worth 2002, pet. denied); Bates, 81
S.W.3d at 424. To determine whether a trial court abused its discretion, we must
decide whether the trial court acted arbitrarily or unreasonably, or without
reference to any guiding rules or principles. Garcia v. Martinez, 988
S.W.2d 219, 222 (Tex. 1999); Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986). A
clear failure by the trial court to analyze or apply the law to the facts
correctly is an abuse of discretion. Walker v. Packer, 827 S.W.2d 833,
840 (Tex. 1992) (orig. proceeding); Transportes Aereos de Coahuila, S.A. v.
Falcon, 5 S.W.3d 712, 717 (Tex. App.--San Antonio 1999, pet. denied).
TROXEL
We first address the correctness of the
trial court's analysis of and reliance upon Troxel to impose a
requirement that parental unfitness or actual or potential harm to the child be
established as an essential element for modification of custody by Grandmother. Troxel
arose from a visitation dispute between a mother and paternal grandparents. The
mother sought to limit the grandparents' visitation after the children's father
committed suicide. 530 U.S. at 61, 120 S. Ct. at 2057. The grandparents then
filed a petition to obtain visitation rights under a Washington statute that
allowed "any person" to petition for visitation rights "at any
time" and authorized the trial court to grant visitation rights whenever
"visitation may serve the best interest of the child." Id. at
61, 120 S. Ct. at 2057-58. The Washington Supreme Court held the statute
facially unconstitutional because it infringed on the fundamental right of
parents to rear their children without requiring a showing that the child might
be harmed by the decision and because it was too broad in allowing any person to
petition for visitation at any time. Id. at 63, 120 S. Ct. at 2058. The
Washington court also determined that the nonparental visitation statute was
unconstitutionally broad because it allowed a trial court judge to order
visitation based solely on what the judge believed was in the best interest of
the children. Id. at 63, 120 S. Ct. at 2058-59.
The United States Supreme Court affirmed
the Washington Supreme Court's judgment. Id. at 63, 120 S. Ct. at 2059.
Justice O'Connor, writing for a plurality, held that, as applied to the
particular facts, the statute unconstitutionally infringed on a parent's right
to make decisions concerning the care, custody, and control of her children. Id.
at 68-69, 73, 120 S. Ct. at 2061, 2064. (4)
Basing its decision on the sweeping breadth of the Washington nonparental
visitation statute, the Supreme Court expressly did not consider whether due
process requires a showing of harm or potential harm to the child before
granting visitation, and did not define the precise scope of the parental due
process right. Id. at 73, 120 S. Ct. at 2064.
In Troxel, Justice O'Connor wrote
that special weight must be given to a fit parent's decisions regarding denial
of visitation to the grandparents as third persons to protect the fundamental
constitutional right of a parent to make decisions concerning the care, custody,
and control of her children. Id. at 65-66, 70, 120 S. Ct. at 2059-60,
2062. Justice O'Connor explained that visitation statutes are designed to
protect the relationships of children with third parties who undertake duties of
a parental nature and the opportunity of children to benefit from relationships
with persons such as grandparents. Id. at 65, 120 S. Ct. at 2059.
However, she concluded that the Washington visitation statute at issue was not
suitably tailored, as applied to the mother, because it was too broad. The
Washington statute placed no limits on either the persons who may petition for
visitation or the circumstances under which visitation may be granted. Id.
at 72-73, 120 S. Ct. at 2063-64. Moreover, Justice O'Connor pointed out the
statute empowered a trial court to impose its judgment over a parent's in
deciding a simple dispute over the length of visititation to be allowed the
grandparents based solely on the trial judge's belief as to the best interest of
the child. Id. at 67-68, 73, 120 S. Ct. at 2061, 2064.
Father contends the trial court correctly
concluded that the Texas modification statute is likewise unconstitutional in
allowing modification of managing conservatorship by awarding custody to a
nonparent based solely on the trial court's subjective determinations of a
material change in circumstances and positive improvement. According to Father,
these requirements are too vague and broad to protect his constitutional due
process rights as a fit parent to direct the care and custody of his child. We
disagree.
Troxel involved a visitation
statute, not a statute dealing with modification of custody. The purposes of a
non-parental visitation statute, as explained by Justice O'Connor, presume
fitness of the custodial parent. As discussed below, the purposes of the Texas
modification statute are entirely different from a visitation statute, and the
modification statute does not presume fitness of the custodial parent.
Additionally, contrary to the conclusion of the trial court, we do not read the
decision of the plurality in Troxel as determining that the Due Process
Clause requires a showing of harm or potential harm to the child. Troxel does
not support the trial court's placing of the burden on Grandmother to show
unfitness of Father or harm or potential harm to the child as predicates for
modification.
The modification statute's requirement of
a material and substantial change of circumstances is predicated upon the
doctrine of res judicata as to the best interest of the child at the
time of the original decree awarding conservatorship. See Watts v. Watts,
563 S.W.2d 314, 316 (Tex. Civ. App.--Dallas 1978, writ ref'd n.r.e.). The policy
behind the requirement of a material and substantial change is to prevent
constant relitigation with respect to children. Id. The concept that
the issue of best interest at the time of the divorce is res judicata
is incorporated into the requirement that in a modification proceeding, the
party seeking custody must show a material and substantial change in
circumstances since the original decree. Bates, 81 S.W.3d at 423. The
requirement of this showing serves a valid purpose of significantly limiting the
trial judge's discretion and prevents the modification statute from being
unconstitutionally broad.
Additionally, as with all suits regarding
conservatorship of a child, Texas courts have consistently held that "'[t]he
best interest of the child shall always be the primary consideration of the
court' in a proceeding to change managing conservators." In re T.D.C.,
91 S.W.3d at 873; see Tex. Fam. Code Ann. § 153.002; In re M.R.,
975 S.W.2d 51, 53 (Tex. App.--San Antonio 1998, pet. denied); In re Marriage
of Chandler, 914 S.W.2d 252, 253-54 (Tex. App.--Amarillo 1996, no writ).
(5) In In re T.D.C., this court noted its agreement with
those courts of appeals that have concluded there is no meaningful distinction
between "positive improvement" and "best interests" of the
child. 91 S.W.3d at 873 n.6.
The Texas Family Code does not define or
set out the relevant factors to be considered when determining whether a
requested change in managing conservatorship is in the best interest of or a
positive improvement for a child. However, in other contexts involving a best
interest analysis, Texas courts have applied the Holley factors--a
nonexhaustive list of considerations for determining a minor's best interest. Holley
v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976); see Bates, 81
S.W.3d at 433 (including Holley factors in list of factors to ascertain
best interest of child in parental relocation context); In re Doe 2, 19
S.W.3d 278, 282 (Tex. 2000) (applying Holley factors for best interest
determination in judicial bypass provision of parental notification act); In
re Marriage of Bertram, 981 S.W.2d 820, 822-23 (Tex. App.--Texarkana 1998,
no pet.) (applying Holley factors for best interest determination in
conservatorship proceeding). The Holley factors have also been
considered to determine whether modification of conservatorship would be in the
best interest of or a positive improvement for a child. Turner v. Turner,
47 S.W.3d 761, 767 (Tex. App.--Houston [1st Dist.] 2001, no pet.).
Included in the Holley factors
are the desires of the child; the emotional and physical needs of the child now
and in the future; the emotional and physical danger to the child now and in the
future; the parental abilities of the individuals seeking custody; the programs
available to assist these individuals to promote the best interest of the child;
the plans for the child by these individuals or by the agency seeking custody;
the stability of the home or proposed placement; the acts or omissions of the
parent which may indicate that the existing parent-child relationship is not a
proper one; and any excuse for the acts or omissions of the parent. Holley, 544
S.W.2d at 371-72. The Texas Supreme Court expressly stated in Holley,
and recently reiterated in In re C.H., that these considerations are
not exhaustive. In re C.H., 89 S.W.3d 17, 27 (Tex. 2002); Holley,
544 S.W.2d at 371-72. In the context of custody modification, other factors to
be considered include the child's need for stability and the need to prevent
constant litigation in child custody cases. V.L.K., 24 S.W.3d at 343.
In Troxel, in contrast, the
United States Supreme Court observed that the Washington Supreme Court had
declined to construe the nonparental visitation statute at issue narrowly to
require consideration of any specific factors but, instead, had interpreted it
literally and broadly as allowing the trial court to order visitation with any
person based solely on what the trial court believed to be in the child's best
interest. 530 U.S. at 67, 120 S. Ct. at 2061. The Supreme Court agreed that the
breathtakingly broad language of the Washington statute, as thus construed,
contravened the parent's fundamental right to make childrearing decisions. Id.
Considering the Texas modification statute in light of the policy considerations
behind it, as well as the case law concerning the statutorily required elements,
we conclude that the Texas statute is not too vague or overbroad to protect
Father's constitutional due process rights. As construed by the courts, the
Texas modification statute necessarily includes consideration of the fitness of
the parent and whether a change in custody would harm the child, regardless of
whether those findings are constitutionally required.
We agree with Grandmother that, absent a
directive imposed by Troxel requiring specific prerequisites for
modification of conservatorship, the trial court erred and, consequently, abused
its discretion in placing the burden on Grandmother to establish unfitness of
Father or actual or potential harm to the child rather than the elements
required by the statute.
THE PARENTAL PRESUMPTION
Father also argues that he is
constitutionally entitled to the parental presumption that the best interest of
a child is served by awarding custody to a natural parent, codified in the Texas
Family Code as follows:

 [U]nless the court finds that
 appointment of the parent or parents would not be in the best interest of the
 child because the appointment would significantly impair the child's physical
 health or emotional development, a parent shall be appointed sole managing
 conservator or both parents shall be appointed as joint managing conservators
 of the child.

Tex. Fam. Code Ann. § 153.131(a) (Vernon
2002).
Father points out that the parental
presumption, applicable in the initial determination of custody upon divorce, is
rebuttable by proof by a nonparent that appointment of the parent would
significantly impair the child's health or development, citing Brook v.
Brook, 881 S.W.2d 297, 298 (Tex. 1994). However, Father also recognizes, as
he must, that the Supreme Court of Texas in In re V.L.K. held that the
parental presumption is not available to a natural parent in
modification proceedings. 24 S.W.3d. at 341-43. In essence, Father contends
that, when a modification proceeding pits a parent against a nonparent, the
parental presumption nevertheless must apply as a matter of constitutional due
process, so as to place the burden on a nonparent to prove unfitness of the
parent or a threat of harm to the child if the parent is retained as managing
conservator, in order for the nonparent to obtain custody.
The basis for the parental presumption is
the "natural affection usually flowing between parent and child." V.L.K.,
24 S.W.3d at 341; Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787,
790 (1955). This presumption is deeply embedded in Texas law, and the Texas
Legislature codified the presumption in the family code section that governs
original custody determinations, but not in the sections that govern
modification of managing conservatorship. Tex. Fam. Code Ann. §§ 153.131,
156.101 - .1045 (Vernon 2002); V.L.K., 24 S.W.3d at 341-42; Lewelling
v. Lewelling, 796 S.W.2d 164, 166 (Tex. 1990); Mumma v. Aguirre, 364
S.W.2d 220, 221 (Tex. 1963); Legate v. Legate, 87 Tex. 248, 28 S.W.
281, 282 (1894).
The Texas Supreme Court determined in V.L.K.
that, whatever effect the parental presumption may have in an original custody
proceeding, it cannot control a suit to change custody because a modification
statute addresses different policy concerns than a statute governing an award of
original custody. V.L.K., 24 S.W.3d at 342-43; Taylor, 276
S.W.2d at 790; Bates, 81 S.W.3d at 421.
In the modification context, the State has
a compelling interest to protect the child's need for stability and to prevent
constant litigation in child custody cases. V.L.K., 24 S.W.3d at 342; Hogge
v. Kimbrow, 631 S.W.2d 603, 604-05 (Tex. App.--Beaumont 1982, no writ).
Because a change in custody usually disrupts the child's living arrangements and
the channels of a child's affection, and in effect alters the entire tenor of
the child's life, a change should be ordered only when the trial court is
convinced that a change is to be a positive improvement for the child. V.L.K.,
24 S.W.3d at 343; Taylor, 276 S.W.2d at 790; Simmons v.
Hitchcock, 283 S.W.2d 84, 87 (Tex. Civ. App.--El Paso 1955, no writ). We
decline to accept Father's argument, which flies in the face of V.L.K., that
the parental presumption must apply in the modification context.
In this case, the trial court did not
follow the statute's requirement that there must be a material change in
circumstances, gave no consideration to M.N.G.'s written choice of Grandmother
as his managing conservator, and made no finding concerning whether modification
of custody would be a positive improvement for M.N.G. Instead, the trial court
improperly imposed a burden on Grandmother to establish unfitness of Father or
harm or potential harm to M.N.G. in retaining Father as managing conservator to
support her right to modification of custody, and then found that she failed to
carry that burden as to either element. Those findings were inadequate because
they did not address the controlling elements required to determine whether
modification was appropriate under the statute, and will not support the
judgment. See In re Marriage of Edwards, 79 S.W.3d 88, 96 (Tex.
App.--Texarkana 2002, no pet.) (holding findings not addressing essential
elements for appointment of receiver inadequate to support order as matter of
law).
Furthermore, we may not imply the required
findings, as the parties urge us to do: Grandmother contends that the evidence
is legally and factually sufficient to support the judgment based on implied
findings of a material change in circumstances and that appointment of her as
M.N.G.'s new sole managing conservator would be a positive improvement for M.N.G.,
and Father contends that it is not. Where a trial court's findings of fact and
conclusions of law are based on an erroneous interpretation of the law, an
appellate court may not imply fact findings to support the judgment. Wilson
v. O'Connor, 555 S.W.2d 776, 781 (Tex. Civ. App.--Dallas 1977, writ
dismissed); see Tex. R. Civ. P. 299 (mandating that judgment may not be
supported by presumed finding on any ground of recovery or defense, no element
of which has been included in the findings of fact); Las Vegas Pecan &
Cattle Co., Inc. v. Zavala County, 682 S.W.2d 254, 256 (Tex. 1984).
CONCLUSION
We hold that section 156.101 is not
unconstitutional as applied to M.N.G.'s father. We further hold that the trial
court abused its discretion by not following the requirements for modification
of conservatorship of a child contained in family code section 156.101.
Therefore, we sustain Grandmother's issues. Accordingly, we reverse the trial
court's order denying modification and remand for a new trial.
 
                                                                   
ANNE GARDNER
                                                                   
JUSTICE
 
PANEL B: DAY, LIVINGSTON, and GARDNER, JJ.
DELIVERED: May 8, 2003

1. As amended, effective September 1, 2001, after the
proceedings and final order in this case, the current version of section 156.101
eliminates the requirement of a showing of "positive improvement" and
adds a third ground for modification: "the conservator who has the
exclusive right to establish the primary residence of the child has voluntarily
relinquished the primary care and possession of the child to another person for
at least six months." Tex. Fam. Code Ann. § 156.101(3) (Vernon 2002).
2. Hereinafter, all references to Tex. Fam. Code Ann. §
156.101 in this opinion will refer to the version of the statute in effect at
the time of the trial court's ruling, unless indicated otherwise.
3. In his brief, father also claims the modification
statute is unconstitutional as applied to him because it allegedly violates the
equal protection and privileges and immunities clauses, his right of
association, and his due course of law rights. U.S. Const. amend. I, IX, XIV;
Tex. Const. Art. I, §§ 3, 19. Father did not raise any of these issues in the
trial court. Generally, before a party may complain on appeal, the alleged error
must be brought to the trial court's attention; however, a party who obtains a
favorable judgment has no reason to complain to the trial court and does not
waive alternative grounds denying recovery when the judgment denies recovery on
a ground that is later reversed. See Oak Park Townhouses v. Brazosport Bank
of Tex., N.A., 851 S.W.2d 189, 190 (Tex. 1993). Nevertheless, the
alternative grounds must have been raised in the trial court before they can be
considered to support the judgment. See id.; see also Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990) (holding that when no findings of fact or
conclusions of law are requested or filed, appellate court will imply that trial
court made all findings necessary to support judgment and will affirm judgment
if it could be upheld on any legal theory that found support in evidence). A
party may bring a matter to the court's attention for the first time on appeal
only when fundamental error exists. Mapco, Inc. v. Carter, 817 S.W.2d
686, 687 (Tex. 1991); El--Kareh v. Tex. Alco. Bev. Comm'n, 874 S.W.2d
192, 194 (Tex. App.--Houston [14th Dist. 1994, no pet.). Because
none of Father's alternative constitutional issues raise fundamental error, we
will not address them.
4. In their concurrences, Justices Souter and Thomas
concluded that the statute was overly broad on its face and would not have
addressed whether it was unconstitutional as applied. Id. at 75, 80,
120 S. Ct. at 2065, 2067 (Souter, J., concurring; Thomas, J., concurring).
5. The version of the modification statute at issue did
not expressly set forth the "best interest" requirement, but that
omission was remedied in the 2001 amended version. Tex. Fam. Code Ann. §
156.101 (Vernon 2002).