# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00271-CV

**Russell Silverman, Appellant**

**v.**

**Damaris Johnson, Appellee**

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. C2005-0490A, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Russell Silverman appeals from the trial court's final order in his suit to modify the parent-child relationship as governed by the final divorce decree between Silverman and appellee Damaris Johnson. On appeal, Silverman argues that the trial court erred in making certain evidentiary rulings prior to and during trial, by including certain findings in the final order, and by affirming the jury's verdict that Johnson remain sole managing conservator. We affirm the trial court's judgment.

## BACKGROUND

Silverman and Johnson divorced in March 2006. After a jury trial, the parties entered an agreed divorce decree that partially incorporated the jury's verdict appointing Johnson as

sole managing conservator of the couple's 11-year-old son, R.S.,[1] and Silverman as possessory conservator.[2] The decree also included a finding that Silverman "has a history or pattern of committing family violence during the two-year period preceding the filing of this suit or during the pendency of this suit." Based on this finding, the decree required Silverman to make an appointment "within seven (7) days of receiving notice from [Johnson's] attorney . . . with the psychiatrist recommended by [Johnson's] attorney in order to have a psychiatric evaluation performed." The decree further stated that Silverman's failure to obtain a psychiatric evaluation or follow any resulting recommendations for treatment "shall constitute a basis for the court to limit access under this standard visitation provision."

The divorce decree also prohibited Silverman from filing any action for modification of child custody or conservatorship based on the provisions of the family code that allow a child over the age of twelve to designate the parent with whom he wishes to reside. *See* Tex. Fam. Code Ann. §§ 153.008, 156.101(2), .102(b)(2) (West 2008). In addition, the decree stated that Silverman was prohibited from filing any action for modification of custody or conservatorship without first paying Johnson $5,000 for her initial attorney's fees, and that in the event that "the court finds that [Silverman] has not brought his action for modification in good faith, [Silverman] shall be liable for all of the attorneys fees and expenses incurred by [Johnson]."

---

[1] We will refer to the minor child by his initials. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2008).

[2] In the agreed divorce decree, Johnson waived $450,000 in tort damages that she was awarded by the jury based on physical and mental abuse inflicted by Silverman during the marriage.

2

In November 2006, the parties filed an agreed modification of the property settlement provisions of the divorce decree, in which Johnson agreed to further reduce the amount awarded to her in the divorce.

In March 2007, Johnson informed Silverman that she had accepted a new job in Houston and would be moving there from Comal County with R.S. Both Silverman and R.S., who was 12 years old at the time, strongly protested the move. The parties' relationship, which had been relatively cooperative after the divorce, deteriorated quickly. Johnson and R.S. moved to Houston on or around June 1, 2007, and a wave of litigation followed. Of relevance to the present appeal, Johnson filed a petition for enforcement of the divorce decree on June 6, 2007, and requested that Silverman be held in contempt for failure to abide by certain terms of the decree. After a four-day evidentiary hearing, the trial court issued a final order on contempt and enforcement ("the enforcement order") in January 2008. In the enforcement order, the trial court found that Silverman had violated the provision of the divorce decree requiring him to make an appointment with a psychiatrist recommended by Johnson's counsel for a psychiatric evaluation within seven days of counsel's request. The trial court further found that Silverman had violated the visitation order included in the divorce decree by failing to voluntarily turn R.S. over to Johnson on May 26, 2007, shortly before Johnson and R.S.'s move to Houston, requiring "a constable to come to the residence and instruct Mr. Silverman to relinquish physical possession" of R.S. The trial court found Silverman in contempt for these two violations, imposed a sentence of 60 days' confinement, and assessed $38,500 in attorney's fees and costs against Silverman.[3]

---

[3] The trial court suspended the first 20 days of Silverman's sentence, and provided that the remainder of the sentence would be suspended if he complied with the terms of the divorce decree and enforcement order.

The trial court also restricted Silverman's access to R.S., stating, "Unsupervised possession and communication by [Silverman] shall be suspended. There shall be no contact by [Silverman] with the child until such time as Dr. Gunzburger/Dr. Murphey, the child's therapists, and any persons dealing with [Silverman's] assessment/therapy below, specifically approve same in writing . . . ." The trial court further ordered Silverman to undergo an additional psychiatric or psychological assessment.

In February 2008, after the trial court issued the enforcement order, Silverman filed an amended motion to modify the parent-child relationship, requesting that he be appointed sole managing conservator of R.S., or alternatively, joint managing conservator with the exclusive right to determine R.S.'s primary domicile.[4] A five-day jury trial was held, ending on April 4, 2008.

The jury heard from a variety of witnesses, including Johnson, Silverman, R.S., one of R.S.'s friends, and three different mental health professionals—a clinical psychologist who had been appointed by the court to conduct a psychological evaluation of Silverman, a clinical psychologist who had evaluated and treated Johnson, and R.S.'s therapist. R.S.'s older brother, C.S., testified in support of Silverman becoming R.S.'s custodial parent and further stated that he was estranged from Johnson.[5] Meanwhile, R.S.'s paternal grandmother, Chris Silverman, testified in support of Johnson remaining as custodial parent and stated that she was estranged from Silverman.

Over the course of the five-day jury trial, highly conflicting testimony was presented on a variety of issues, including R.S.'s hygiene, nutrition, and general demeanor while living with

---

[4] Silverman's original motion to modify was filed June 12, 2007.

[5] The divorce decree did not include a custody provision for C.S. because he was no longer a minor at the time of the divorce.

4

Johnson, the reason for C.S.'s estrangement from Johnson, the mental health of each parent, the extent to which Silverman had alienated R.S. from Johnson or otherwise "brainwashed" him, Silverman's ability and tendency to manipulate others, each parent's respective level of involvement with R.S.'s education and recreational activities, each parent's respective propensity for truthfulness, each parent's motives for seeking to retain or obtain custody of R.S., each parent's smoking habits, and the amount of financial support each parent provided or offered to R.S. in areas ranging from the quality and quantity of his birthday presents to his orthodontic care. In almost every single issue in this case, the parties presented dramatically different versions of the facts.

R.S. initially testified, for example, that his mother never took him to the movies during the first summer he spent in Houston, but clarified on cross-examination that his mother had accompanied him to the movies, but had not "taken" him because it was his grandmother who had actually paid for the tickets. R.S. also testified that his mother forced him to stay home alone all summer in Houston, but acknowledged on cross-examination that he had gone swimming multiple times, ridden his bike in the neighborhood, visited friends, gone to an amusement park with his mother and grandmother, and visited Louisiana with his grandmother and cousin that summer. R.S. also described his mother's three-bedroom home as "small" and "usually dirty." When presented with photos of the home, which were entered into evidence and appear to be inconsistent with his characterization of the home, R.S. acknowledged that they were representative of its usual appearance. R.S. further testified that he did not have any pets at his mother's home, but conceded on cross-examination that there was a dog in the home, although he took the position that it was Johnson's dog rather than his own. R.S. also testified on direct examination that Johnson smokes

5

inside the house, but explained on cross that by "inside the house," he meant in the garage with the garage door partially open. In addition, R.S. testified that he was failing two classes while living with his mother in Houston, but after reviewing his grade report on cross-examination, confirmed that he was not, in fact, failing any classes.

The jury also heard evidence of complaints that R.S. had previously made about living with his mother, including a conversation in which R.S. told Silverman that Johnson had not done laundry for over a month, and then, in the same conversation, complained about "having to keep constantly walking to the washing machine" to retrieve his clothes after Johnson had washed them.[6] When asked by the trial court to provide examples for why he described his mother as "mean," R.S.'s sole example was that his mother once got angry at him for asking her, "Why?" when she told him not to pour soda into a bowl. R.S. also indicated that his paternal grandmother was "mean" because she once asked him to get up from the table at a restaurant and get her a fork.

Johnson took the position at trial that Silverman had manipulated both R.S. and the couple's other son, C.S., eliciting testimony from mental health professionals that R.S. demonstrated responses or behaviors consistent with the phenomenon of parental alienation, in which one or both parents to a custody dispute attempts to denigrate the other parent and alienate the child from that parent.[7]

---

[6] This conversation between R.S. and Silverman took place by phone and was tape recorded by Silverman without R.S.'s knowledge. Both Silverman and Johnson admitted to surreptitiously recording hours of telephone conversations with or involving R.S. over the course of the divorce proceedings and subsequent custody dispute. While the tapes from these conversations were not admitted into evidence, multiple witnesses testified regarding the subject matter of the conversations.

[7] *See* Ira Turkat, *Parental Alienation Syndrome: A Review of Critical Issues*, 18 J. Am. Acad. Matrimonial Law. 131, 133 (2002) (describing parental alienation syndrome as occurring "when one parent campaigns successfully to manipulate his or her children to despise the other parent despite the absence of legitimate reasons for the children to harbor such animosity").

After hearing the evidence, the jury returned a verdict that Johnson remain sole managing conservator. The trial court then issued its final order in the suit to modify the parent-child relationship ("the modification order"), incorporating both the jury verdict and those provisions of the enforcement order that restricted Silverman's access to R.S. Specifically, the modification order states that Silverman shall have no contact with R.S. until such time as Johnson's therapist, R.S.'s therapist, and Silverman's therapist all approve such contact in writing. The trial court further found "that the suit to modify was filed frivolously or designed to harass [Johnson]," and assessed attorney's fees against Silverman in the amount of $60,000.[8]

Silverman filed a pro se notice of appeal on April 30, 2008, after the jury trial in his suit to modify, but before the modification order was issued. In his notice of appeal, Silverman stated that "he intends to appeal all sections, ruling and verdicts in the above-styled and numbered cause." Both the enforcement order and the modification order were issued under trial court cause number C2005-0490A, the cause number indicated on Silverman's notice of appeal. In his appellate brief, Silverman raises points of error regarding both the enforcement order and the modification order.

After Silverman's brief was filed, Johnson filed a motion to dismiss this appeal, arguing, in relevant part, that Johnson could not appeal the modification order because his notice of appeal was filed before that order was issued. However, a premature notice of appeal is "deemed filed on the day of, but after, the event that begins the period for perfecting the appeal." Tex. R.

---

[8] In his brief on appeal, Silverman claims that the trial court "disregarded" the jury's verdict that each side be awarded $60,000 in attorney's fees. The jury did not, in fact, make any findings regarding which party should be awarded attorney's fees, but merely determined the amount of fees that were reasonably and necessarily incurred by each party.

7

App. P. 27.1(a). In Silverman's response to Johnson's motion, he stipulated that his appeal from the enforcement order was rendered moot when the trial court incorporated certain provisions of the enforcement order into the modification order. On that basis, we will treat Silverman's notice of appeal as effective to perfect an appeal from the modification order only.[9] We will not reach Silverman's points of error in relation to the enforcement order unless they apply equally to the modification order.[10]

Silverman raises six points of error in relation to the modification order. He argues that the trial court erred by (1) excluding any testimony from R.S. regarding the parent with whom he preferred to reside, (2) allowing evidence of events that occurred prior to the parties' divorce, (3) allowing testimony regarding settlement negotiations, (4) incorporating the provision of the enforcement order that conditioned contact between Silverman and R.S. on the approval of three separate mental health professionals, (5) awarding attorney's fees in favor of Johnson based on a finding that Silverman's suit to modify was frivolous or harassing, and (6) entering judgment on the jury's verdict that Johnson remain sole managing conservator when there was insufficient evidence to support the verdict.

---

[9] We overruled Johnson's motion to dismiss on July 2, 2009.

[10] In any event, we do not have jurisdiction to reach Silverman's complaints regarding the enforcement order to the extent he argues that the trial court erred in finding him in contempt of the divorce decree. *See Cadle Co. v. Lobingier*, 50 S.W.3d 662, 671 (Tex. App.—Fort Worth 2001, pet. denied) ("Decisions in contempt proceedings cannot be reviewed on appeal because contempt orders are not appealable, even when appealed along with a judgment that is appealable."); *Roloff Evangelistic Enters. v. State*, 598 S.W.2d 697, 699 (Tex. Civ. App.—Austin 1980, no writ).

**STANDARD OF REVIEW**

We review a trial court's evidentiary rulings for an abuse of discretion. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). An award of attorney's fees in a suit affecting the parent-child relationship is also reviewed for an abuse of discretion. *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996). Similarly, "[a] trial court has wide discretion in determining the best interest of a child in family law matters such as custody, visitation, and possession." *Burney v. Burney*, 225 S.W.3d 208, 212 (Tex. App.—El Paso 2006, no pet.). The trial court "is in a better position to determine what will be in the best interest of the children since it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." *Coleman v. Coleman*, 109 S.W.3d 108, 111 (Tex. App.—Austin 2003, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

A jury's findings underlying a conservatorship decision are subject to a factual and legal sufficiency review. *In re J.A.J.*, 243 S.W.3d 611, 617 n.5 (Tex. 2007). To evaluate the legal sufficiency of the evidence to support a finding, we must "determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). In reviewing a verdict for legal sufficiency, we credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). To evaluate the factual sufficiency of the evidence to support a finding, we consider all of the evidence, setting aside the verdict only if the evidence supporting the

9

jury finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We may not substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

## DISCUSSION

In his first point of error, Silverman argues that the trial court erred by excluding any testimony from R.S. regarding the parent with whom he wished to reside. Prior to trial, the trial court signed a motion in limine order that prohibited either party from making "[a]ny reference to the child's preference of primary domicile, whether it be in the form of a statement of the child written or oral to any person," without first obtaining a favorable ruling from the court on the admissibility of such a statement. Silverman's counsel conceded that the parties' agreed divorce decree prohibited a modification based on R.S.'s preference and that a written statement of such preference was therefore inadmissible. During R.S.'s testimony, Silverman's counsel did not attempt to elicit any testimony regarding the parent with whom R.S. wished to reside and did not seek a ruling from the trial court on the admissibility of any such testimony. As a result, this issue has not been preserved for appellate review. *See* Tex. R. App. P. 33.1 (to preserve error for appellate review, party must present complaint to trial court and obtain ruling).

Silverman also argues that any waiver of R.S.'s right to file a written preference "is void and unenforceable as a matter of public policy and legislative intent." We disagree. First, Silverman provides no authority for this position. Second, while the family code provides that a child over the age of 12 may file a written preference, *see* Tex. Fam. Code Ann. § 153.008, there is

10

no statutory requirement "that the writing made by the child be received into evidence." *Turner v. Turner*, 47 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2001, no pet.). R.S. did, in fact, file a written preference, which appears in the clerk's record but was not introduced into evidence. Finally, the primary public policy consideration in determining conservatorship is the best interest of the child, which may or may not be consistent with the child's expressed preferences. *See id.* §§ 153.001-.002 (West 2008); *In re A.R.*, 236 S.W.3d 460, 480 (Tex. App.—Dallas 2007, no pet.) (manipulation by one parent against the other called into question "any expression of preference by the child"). Silverman's first point of error is overruled.[11]

In Silverman's second point of error, he argues that the trial court erred by allowing Johnson's counsel to reference events that occurred prior to the parties' divorce, in violation of the motion in limine order. The motion in limine order does not conclusively prohibit the presentation of any evidence, but merely requires a bench conference and favorable ruling from the trial court before any reference to certain matters, including "events or actions occurring before the date of the parties['] divorce." In arguing that the trial court improperly allowed Johnson's counsel to reference pre-divorce matters, Silverman quotes a number of statements made at trial in which Johnson's counsel pointed out that the parties' divorce decree included a family-violence finding. Silverman's counsel did not raise a "pre-divorce" objection to the majority of the quoted statements. Furthermore, the divorce decree was admitted into evidence—a ruling that Silverman does not

---

[11] We note also that the child's preference is not considered controlling evidence in a custody proceeding. *See Bennett v. Northcutt*, 544 S.W.2d 703, 708 (Tex. Civ. App.—Dallas 1976, no writ); *see also Turner v. Turner*, 47 S.W.3d 761, 766 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("[A] child's mere desire to live with the other, more lenient parent would be legally insufficient standing alone to prove that a retention of the sole managing conservator would be detrimental to the child's welfare.").

11

challenge on appeal. During the pretrial hearing on the motion in limine, the trial court stated, "Whatever is in the decree I think is fair game as far as what can be mentioned during the course of examination or cross-examination." Because the divorce decree, which included a family-violence finding, was admitted into evidence, we hold that the trial court did not abuse its discretion in allowing Johnson's counsel to make the complained-of statements.[12] Silverman's second issue is overruled.

In his third issue on appeal, Silverman contends that the trial court erred in allowing Johnson's counsel to reference settlement negotiations between the parties. Again, Silverman quotes a number of statements in his brief that he claims were improper references to settlement negotiations, but the majority of the quoted statements were not objected to on that basis. Of the objections that were made, one was sustained and another led Johnson's counsel to withdraw the question. The remaining statements refer to a post-divorce agreed modification of the divorce decree, in which Johnson agreed to release Silverman from a large portion of his financial obligations under the decree. Johnson took the position at trial that she did this in an attempt to maintain a cooperative relationship for R.S.'s sake after the parties' divorce. While settlement negotiations are inadmissible to prove a party's liability, they may be admitted for other reasons, such as establishing a party's state of mind. *See* Tex. R. Evid. 408; *Tarrant County v. English*, 989 S.W.2d 368, 377 (Tex. App.—Fort Worth 1998, pet. denied). We hold that the trial court did

---

[12] The fact that the divorce decree included a family-violence finding is also relevant to explain, in part, why Johnson was originally named sole managing conservator, despite the presumption in favor of appointing joint managing conservators. *See* Tex. Fam. Code Ann. § 153.004 (West 2008) (court must consider evidence of family violence in making conservatorship determination and may not appoint joint managing conservators if history of family violence exists).

not abuse its discretion in allowing Johnson's counsel to reference negotiations related to the parties' agreed modification of the property settlement provisions of the divorce decree. Silverman's third issue on appeal is overruled.

In his fourth issue on appeal, Silverman argues that the trial court erred by "sua sponte" incorporating the visitation and access provisions of the enforcement order into the modification order because no question was submitted to the jury on that issue. He further contends that the trial court abused its discretion in restricting his access to R.S. First, we observe that the trial court did not, as Silverman suggests, terminate his parental rights, but merely conditioned his future access and visitation on the approval of the treating therapists of Silverman, Johnson, and R.S. Second, the trial court was actually prohibited under the family code from allowing the jury to determine the terms or conditions of Silverman's possession or access. Tex. Fam. Code Ann. § 105.002(c)(2) (West 2008) (in jury trial, court may not submit to jury questions on issue of "a specific term or condition of possession of or access to the child").

Finally, "[t]he trial court has the authority to determine frequency and duration of visits and to place any necessary limitations and safeguards on visitations." *Blackwell v. Humble*, 241 S.W.3d 707, 719 (Tex. App.—Austin 2007, no pet.). Orders imposing "restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child." Tex. Fam. Code Ann. § 153.193 (West 2008). The terms and conditions related to conservatorship must be left to the sound discretion of the trial court, because the "trial court is in the best position to observe the witnesses and 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record." *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.). "[A]n abuse of discretion does not occur

13

as long as some evidence of a substantive and probative character exists to support the trial court's decision." *Id.* We note also that the family code authorizes a trial court to order a party to participate in counseling with a mental health professional if it finds that the parties have a history of conflict in resolving issues of conservatorship, possession, or access. *See* Tex. Fam. Code Ann. § 153.010 (West 2008).

In this case, the trial court heard the testimony of a number of witnesses over the course of the five-day jury trial and reviewed the voluminous evidence that was presented by both parties during the enforcement proceedings, including evidence that Silverman had experienced hallucinations or delusions in the past. The trial court also conducted an in-chambers interview with R.S. during the enforcement proceedings, a transcript of which appears in the record. The trial court was presented with substantial evidence that R.S. exhibited behaviors and responses indicative of parental alienation by Silverman, as well as testimony regarding the negative effect of Silverman's influence on R.S.'s demeanor, attitude, and behavior and the questionable nature of Silverman's ability to interact with R.S. appropriately. In light of the evidence presented, we cannot conclude that the trial court abused its discretion in determining that the restrictions imposed on Silverman's visitation and access were required to protect the best interest of the child. Silverman's fourth issue is overruled.

In his fifth point of error, Silverman argues that the trial court erred in assessing $60,000 in attorney's fees against him pursuant to a finding that his suit to modify was filed frivolously or for the purpose of harassing Johnson. *See id.* § 156.005 (West 2008) ("If the court finds that a suit for modification is filed frivolously or is designed to harass a party, the court shall tax attorney's fees as costs against the offending party."). To support his argument that his suit was

not frivolous or designed to harass, Silverman cites the fact that R.S. signed a written notice of his preference to live with Silverman. Given that the parties' divorce decree expressly prohibited any suit to modify based on the child's preferred custodial parent, we are not persuaded by this argument.

Silverman also argues that his suit cannot be frivolous because Johnson's motion for summary judgment was denied by the trial court. Johnson's motion, however, was based solely on her argument that in light of the trial court's enforcement order, Silverman's suit to modify the parent-child relationship was barred by the doctrines of res judicata and collateral estoppel. Furthermore, even if the denial of Johnson's motion could establish that Silverman's suit was not frivolous, it does not foreclose the possibility that the suit was designed to harass Johnson.

Johnson took the position throughout the proceedings that Silverman was attempting to drain her resources through endless litigation, in order to ultimately force her to relinquish custody. She described Silverman's "continuing bitterness and drawing into court and constant harassment," and testified during the enforcement hearing that Silverman was "relentless—to where I'm just worn down and exhausted and can't keep fighting. Because that's what he does. That's what this whole court thing is about. He's trying to wear me down, beat me down[,] financially wipe me out." Silverman also testified at the enforcement hearing that he planned to continue engaging in litigation and would never agree to any arrangement short of R.S. living with him.

During the course of the litigation between Silverman and Johnson, Silverman filed two grievances against Johnson's counsel with the State Bar of Texas, both of which were dismissed, as well as grievances against two different mental health professionals involved in the litigation, both of which were also dismissed. Silverman also reported Johnson to Child Protective Services (CPS) in connection with her care of R.S. After an investigation, CPS determined the report to be without

merit. Silverman also filed an unsuccessful declaratory-judgment action against Johnson in an attempt to avoid paying her the $5,000 required under the agreed divorce decree as a condition precedent to any suit to modify the parent-child relationship. This history suggests that Silverman's motion to modify was consistent with an overall pattern of harassing behavior directed at prolonging litigation and draining Johnson's resources. As a result, we hold that the trial court did not abuse its discretion in taxing Johnson's attorney's fees as costs to Silverman under family code section 156.005.[13] Furthermore, even in the absence of a finding that Silverman's suit was frivolous or designed to harass, the trial court had discretion to award Johnson her reasonable attorney's fees and expenses. *See id.* § 106.002 (West 2008) (court may render judgment for reasonable attorney's fees and expenses in suit affecting parent-child relationship). Silverman's fifth issue is overruled.

In his sixth issue on appeal, Silverman argues that the jury's verdict that Johnson remain sole managing conservator of R.S. is not supported by the evidence.[14] In order to obtain modification of the conservatorship provisions included in the parties' divorce decree, Silverman was required to establish that modification would be in R.S.'s best interest and that the circumstances of R.S., Silverman, or Johnson "have materially and substantially changed since" the

---

[13] Similarly, based on the evidence presented at the enforcement hearing, the trial court did not abuse its discretion by including a provision in the enforcement order requiring Silverman to pay $38,500 in attorney's fees, to be enforced as child support, based on a finding that the attorney's fees incurred by Johnson were necessary to ensure R.S.'s physical or emotional health or welfare. *See id.* § 157.167(b) (West 2008).

[14] To the extent Silverman argues that the trial court erred in entering judgment on the jury's verdict that Johnson remain sole managing conservator, we point out that the trial court was prohibited under the family code from contravening the jury's verdict on that issue. *See id.* § 105.002(c) (West 2008).

16

divorce decree was entered. *Id.* § 156.101; *see also In re J.R.D.*, 169 S.W.3d 740, 742 (Tex. App.—Austin 2005, pet. denied) ("The party moving for modification has the burden of proving the occurrence of 'material and substantial change.'"). Relocation alone will not typically suffice to establish a material and substantial change in circumstances. *See Bates v. Tesar*, 81 S.W.3d 411, 430 (Tex. App.—El Paso 2002, no pet.) ("[W]e do not hold that relocation, regardless of distance, will suffice to establish a material and substantial change in circumstances. But if the custodial parent moves a significant distance, a finding of changed circumstances may be appropriate. Such a decision is necessarily fact intensive . . . .").

To support his requested modification, Silverman argued that, among other things, Johnson smoked in R.S.'s presence, failed to adequately provide for his nutritional needs, did not take an interest in his education, did not provide him with sufficient recreational activities, and did not ensure that he had clean clothes or that he practiced appropriate hygiene habits. Johnson, on the other hand, presented evidence to the contrary on each of these issues. For example, while acknowledging that R.S. had showered and dressed for school at Silverman's home each morning for a portion of the 2006-2007 school year, Johnson testified that the reason for this was not, as Silverman suggested, that she was unable to care for R.S., but that her home had a "sulfur water" problem during this time period and that she had allowed R.S. to get ready for school at Silverman's home in order to avoid showering in the foul-smelling sulfur water.[15] Both Johnson and

---

[15] Similarly, Silverman offered R.S.'s school agenda into evidence to establish that he, rather than Johnson, had signed off on R.S.'s homework assignments each day as required by the school, indicating that Johnson was not involved in R.S.'s education. Johnson, however, testified that R.S. left his school bag, which included the agenda, at Silverman's home each night during the 2006-2007 school year because he walked to Silverman's home each day after school. Silverman's home was

17

Chris Silverman testified that Johnson kept fruit and other nutritious food available for R.S. and that Johnson usually prepares dinner for R.S., provides him with food that he can prepare himself, or takes him to his favorite restaurants. Johnson and Chris Silverman also testified regarding a number of recreational activities that R.S. had participated in after moving to Houston with Johnson, including an amusement park trip, a vacation to Louisiana, bike riding, swimming, trips to the movies, church activities, two extended visits from his best friend in Comal County, and a "laser quest" excursion. Johnson further testified that she had attempted to get R.S. involved in activities at the local YMCA, as well as organized football, but that he had refused to participate. Johnson also testified that she had not smoked in R.S.'s presence since receiving notice of the trial court's January 2008 enforcement order, which specifically ordered "that neither party shall smoke in the presence of the child." Finally, Johnson testified that if Silverman obtained custody of R.S., R.S. "would be completely and totally alienated from all of his family. He—it wouldn't matter if I wanted to see him or not. He would refuse if he was in the presence of my ex-husband."

As the finder of fact, it is the jury's obligation to resolve evidentiary conflicts and determine the weight and credibility of the witnesses. *See Lilley v. Lilley*, 43 S.W.3d 703, 705 (Tex. App.—Austin 2001, no pet.). "A fact-finder's decision on conflicts in the evidence is generally viewed as conclusive." *Id.* at 705-06. In a case like this one where highly conflicting

---

located less than a mile from R.S.'s school at that time, and the parties had agreed that in the interest of convenience, R.S. could walk from Silverman's home to school and back each day. On those days in which Johnson had possession of R.S. under the divorce decree, she would retrieve R.S. from Silverman's home after she left work and would drop him off again in the morning on her way to work. This arrangement explains why Silverman's signature appears on each page of R.S.'s school agenda. Johnson's counsel characterized this situation as one of many in which Silverman carefully documented his interactions with R.S. in an attempt to build a case for a future custody dispute.

testimony is presented on almost every issue, the jury's role cannot be overstated. This is particularly true in a custody dispute, as "[s]uits affecting the parent-child relationship are intensely fact driven." *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). In reviewing a jury's custody determination, "[w]e are not permitted to act, and will not act, as a second jury; accordingly, we do not pass upon the credibility of the witnesses or otherwise substitute our judgment for that of the jury." *In re Rodriguez*, 940 S.W.2d 265, 271 (Tex. App.—San Antonio 1997, writ denied).

In light of the evidence presented at trial and the deference that must be afforded to the jury's resolution of evidentiary conflicts, we hold that there was legally and factually sufficient evidence to support the jury's verdict allowing Johnson to remain as managing conservator. While it is not clear whether the jury based its verdict on a determination that modification would not be in R.S.'s best interest or that Silverman failed to establish a material and substantial change in circumstances, the evidence is sufficient to support the jury's verdict on either basis. Silverman's sixth issue is overruled.

## CONCLUSION

Having found no error in the trial court's final order in Silverman's suit to modify the parent-child relationship, we affirm the order in its entirety.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:  August 26, 2009

19